We have held that where a common carrier has received freight for transportation, under a special contract limiting his liability at common law, and by which he has undertaken, for an agreed compensation, to carry the goods to the termination of his route, and then to deliver to another carrier, his duty will end when the goods have *Page 432 
reached that terminus and have been delivered to another carrier. (Babcock v. L.S. M.S.R.W. Co., 49 N.Y., 491.)
The written and printed receipt given to the plaintiff, in the case in hand, by the stationman at Oriskany — if it is the contract of the defendant — does not bind it to do more than that. The proof shows that it did take the goods to the terminus of its route, and did deliver them to another common carrier of such property, in the accustomed course of business. So that the question to be determined is, whether this paper did express the only and whole contract of the defendant with the plaintiff's assignor.
There is no dispute but that it expresses the whole contract of the parties, save in one particular. The plaintiff claims, and the defendant denies, that it undertook to forward the goods from Buffalo toward Dennison, in Iowa, by railroad. If there was such undertaking, it is to be found outside the written and printed instrument delivered to and received by the plaintiff. It is found nowhere save in the testimony of the plaintiff. He says that he told the agent of the defendant, at Oriskany, that he wanted it to go as freight by railroad to Dennison, Iowa; that he asked him if he could get it on as through freight to Chicago; that the agent replied, "No; I can't;" that he then asked him "if he could fix it so it would get on to the through freight;" that the agent said, "I think I can fix it all right." But the witness also says that he took from the agent, at the same time, the written and printed instrument above mentioned. We have held inLong v. N.Y.C.R.R. (50 N.Y., 76), that where a shipper of goods takes from the carrier a bill of lading, receipt or other voucher, acknowledging the reception of the goods, and expressing the purposes for, and the terms and conditions on which they are received, the verbal negotiation as to the carriage is merged in the written paper, which must be taken as the evidence, and the sole evidence, of the final and deliberate agreement of the parties, in the absence of mistake or fraud, which must be shown to avoid it.
The learned justice, before whom the case was tried, did *Page 433 
not rule to the contrary of this in terms; nor does he find that the defendant made any agreement different from that expressed in the instrument delivered to the plaintiff. He held and found, however, that the goods were delivered to the defendant to be forwarded by railroad to the consignee; and that the defendant was instructed and directed, at the time the agreement for the transportation thereof was made, to forward the same by railroad, and not otherwise, from Buffalo to and toward the place of destination; and that such instruction and direction was not in contradiction of the written agreement. In this last particular we think he was in error. The agreement in express terms stipulates, that the defendant is to transport the goods to its warehouse in Buffalo, and is not to be liable for the loss thereof by any other carrier after the same has been sent from such warehouse. It further stipulates that goods, consigned to any place beyond the termini of the defendant's road, will be sent forward by a carrier or freight-man willing to receive the same unconditionally for transportation. This obligation is general, and would be fulfilled by sending the goods forward, in the usual course of business, by any carrier so willing who was known to be safe and responsible. The defendant had by it the right to select any carrier, the most convenient for itself, who met these requirements. (Simkins v. N. N.L. St. Co., 11 Cush., 102; see White v. Ashton, 51 N.Y., 280.) But if the direction and instruction, as it is called, was imperative upon the defendant, it added a specific agreement to this general obligation, and provided that it might relieve itself of responsibility by delivery to another carrier — only in case that carrier was one by rail — and not otherwise. This was adding another clause or condition to the agreement not expressed in the writing; and it is no less so that it is called a direction, and treated as something standing outside of the agreement, and existing apart from it. Beyond doubt, a common carrier, in forwarding goods beyond the end of his route, is bound as a general rule, to follow with fidelity the precise instructions of the consignor or to suffer *Page 434 
the risk of a deviation therefrom. (Johnson v. N.Y.C.R.R.,33 N Y, 610.) But it is when in the absence of express stipulations, the instructions become part of the contract under which the goods are committed to the carrier. It is often an important part of a contract of a common carrier, by what mode of carriage he shall forward the goods when they have reached the end of his own route (see Bostwick v. B. O.R.R. Co.,45 N Y, 712; Maghee v. C. A.R.R. Co., id., 514); and if he has taken pains to stipulate in writing that he may do so by any customary mode which is safe and prudent, it is a variation of his contract to permit a prior or cotemporaneous oral direction to control it, and to fix upon him a different duty. In the case last cited, it was the insertion in the bill of lading, of the words "all rail," which was held to constitute not only a direction by the consignor, but an agreement by the carrier, that the goods should go through to ultimate destination by railroad carriage. The carrier was there held to have varied from his undertaking, when he attempted to carry the goods in violation of the instructions in the contract. (P. 524.)
Hence, the motion of the defendant, in this case, to strike out all the testimony of the plaintiff which contradicted or was in conflict with the written receipt, was proper. The learned justice erred in holding that it was not contradictory of it, and in denying the motion.
There are some other questions raised by the exceptions and the points; but, as they are not likely to recur upon a new trial, they are not now noticed.
The judgment should be reversed and a new trial granted, with costs to abide the event.
All concur.
Judgment reversed. *Page 435