Louis Engelhorn, Respondent, *v.* Alexander H. Reitlinger et al., Appellants.

Where, upon inspection of a written contract, read it may be, in the light of surrounding circumstances, it appears to contain the entire engagement of the parties, and to define the object, and measure the extent of such engagement, it constitutes and is presumed to contain the whole contract, and cannot be varied by parol.

In an action for an alleged breach of contract of sale on the part of the vendee in refusing to accept the goods, it appeared that the contract was made by defendants, who were merchants, with plaintiff's assignors, who were manufacturers of the goods in question, through brokers, and was evidenced by a bought and sold note, signed by the brokers, which

set forth the quantity of goods sold, the price, the time of payment, and the time of delivery. Defendants were allowed to prove, under objection and exception, that this note was sent to them with a letter from the brokers which contained a promise that the vendor would advance the price of the goods, that the brokers represented that said assignors would issue a circular to that effect, and that the promise was not performed. At the close of defendants' case the court held that the proof did not make out a defense; and directed a verdict for plaintiff. *Held*, no. error.

Reported below, 23 J. & S. 485.

(Argued June 11, 1890; decided October 7, 1890.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made April 2, 1888, which overruled defendants' exception and ordered judgment upon a verdict directed by the court.

This action was for breach of contract in refusing to accept 15,000 ounces of quinine, which defendants had agreed to purchase from the plaintiff's assignors, by a contract dated February 7, 1887.

The quinine was to be shipped from Europe, and delivered to defendants in March following.

The defense was, that the agreement was entered into upon condition, that if the defendants would execute the contract, the plaintiff's assignors would immediately raise the price of quinine from fifty-nine cents to sixty-one cents, and would issue a circular to the trade to that effect, and that that condition was never performed by the plaintiff's assignors.

The quinine was tendered to the defendants, who refused to accept it, whereupon it was sold upon notice to them for their account, and resulted in a loss. The court directed a verdict for the plaintiff.

Further facts appear in the opinion.

*Adolph L. Sanger* for appellants. The contract was entered into by defendants upon condition that the plaintiff would immediately thereupon raise the price of quinine to sixty-one cents, and issue a circular to the trade to that effect ; and the

evidence shows that the contract would not otherwise have been made. The plaintiff's assignors, not having complied with the condition, could not demand that the defendants should perform their part of the contract. (1 Chitty on Cont. [11th Am. ed.] 72 ; 2 id. 1082–1084, 1090 ; *Grant* v. *Johnson*, 5 N. Y. 247 ; *Crane* v. *Kunbel*, 2 J. & S. 455 ; *Tipton* v. *Feitner*, 20 N. Y. 423 ; *Dey* v. *Dox*, 9 Wend. 109 ; *Mansfield* v. *N. Y. C. R. R. Co.*, 102 N. Y. 211 ; *Cross* v. *Beard*, 26 id. 85, 88 ; 2 Benj. on Sales [6th Am. ed.], §§ 854, 855 ; *Tomkins* v. *Elliott*, 5 Wend. 496.) The representations made by the agents were the inducement for the contract, and the letter written by the agent, which accompanied the contract, must be considered as a part of, or as an element connected with, the contract. (*Ahern* v. *Goodspeed*, 72 N. Y. 103, 113, 115 ; *Bostwick* v. *R. R. Co.*, 45 id. 712 ; *Johnson* v. *Oppenheim*, 55 id. 293 ; *Remington* v. *Palmer*, 62 id. 33, 34 ; *B. F. Ins. Co.* v. *Bunzer*, 10 Hun, 56 ; *Reynolds* v. *Robinson*, 110 N. Y. 654 ; *Benton* v. *Martin*, 52 id. 570 ; Greenl. on Ev. §§ 277, 283 ; *Wilson* v. *Randall*, 67 N. Y. 338, 341 ; 2 Pars. on Cont. [7th ed.] 501 ; *Renard* v. *Sampson*, 12 N. Y. 566 ; *Coe* v. *Tongh*, 116 id. 273.) There is no denial, in fact, of the agent's authority to make the representations which formed the inducement to the defendants to enter into the contract in question, and there could have been none in law. (*Walsh* v. *H. Ins. Co.*, 73 N. Y. 10 ; *Elwell* v. *Chamberlain*, 31 id. 611 ; *Ahern* v. *Goodspeed*, 72 id. 108 ; *Parker* v. *Bd. Suprs.*, 106 id. 392, 418 ; *Mayor, etc.,* v. *Dean*, 115 id. 556.) The suggestion by the court below, both at Circuit and in General Term, that the defendants cannot succeed in this action because they have a cause of action against plaintiff, if they violated their promise, or because they have made no counter-claim for any damage, is untenable. (*Chapin* v. *Dobson*, 78 N. Y. 74 ; *Eighmie* v. *Taylor*, 98 id. 288, 297, 300 ; *Juilliard* v. *Chaffee*, 92 id. 529, 534–536 ; *Mayer* v. *Dean*, 115 id. 556, 560 ; Benj. on Sales [6th Am. ed.], §§ 854, 855, 857, 858 ; *Tipton* v. *Feitner*, 20 N. Y. 423, 425, 432 ; *Grant* v. *Johnson*, 5 id. 247, 255.)

*J. Hampden Dougherty* for respondent.  The bought and sold notes constitute a full and complete contract to sell and purchase quinine.  (*Eighmie* v. *Taylor*, 98 N. Y. 288, 290, 296; *Wilson* v. *Deen*, 74 id. 531, 536; *Johnson* v. *Oppenheim*, 55 id. 280; *Naumberg* v. *Young*, 44 N. J. L. 331; *Angell* v. *Duke*, 32 L. T. [N. S.] 320; *M. H. M. Co.* v. *Neilson*, 39 Minn. 467; *Snowden* v. *Guion*, 101 N. Y. 458, 462, 463; *Long* v. *M. I. Co.*, Id. 638; *Schmittler* v. *Simon*, 114 id. 176, 184; *Suydam* v. *Clark*, 2 Sandf. 133; *Newberry* v. *Wall*, 84 N. Y. 576; *Butler* v. *Thompson*, 92 U. S. 412.)  It was not proper to show that a cotemporaneous oral agreement was made which affects the apparent meaning of the writing. (Jones on Cont. § 120.)  The evidence does not establish the claim of the defendants that the agreement for the purchase of the quinine was made upon condition that the price should be advanced, and a circular as to the advance issued.  (*Pym* v. *Campbell*, 6 El. & Bl. 370.)  The present contract has the further protection which the Statute of Frauds furnishes to contracts of sale.  The writing is deemed to express all the terms upon which the sale is made.  (1 Reed on Stat. of Frauds, § 12; *Wright* v. *Weeks*, 25 N. Y. 160; *Stone* v. *Browning*, 68 id. 598; *Hill* v. *Blake*, 97 id. 216; *Williams* v. *Robinson*, 73 Me. 186; Benj. on Sales, § 206; *Sale* v. *Darragh*, 2 Hill, 196; *Erwin* v. *Sanders*, 1 N. Y. 250; *McConnell* v. *Brierhart*, 17 Ill. 360; *Gordon* v. *Neuman*, 23 N. E. Rep. 454; 42 Hun, 656; Jones on Cont. § 127.)

BROWN, J.  The contract sued upon was made through brokers and the sale note was as follows:

"Dated NEW YORK, *February* 7, 1887.

"Sold for account Messrs. C. F. Boehringer & Soehne to Messrs. A. H. Reitlinger & Company, fifteen thousand ounces B. & S. sulphate of quinine, in 100 ounce tins at fifty-nine cents per ounce, cash ten days from delivery; delivery to be had from a March, 1887, shipment from the factory in Europe, subject to manufacturers' clauses and war risks.

"(Signed.)     ST. JOHN BROTHERS."

The defendants sought to show that said agreement was entered into by them upon the representations made by the broker and upon the condition that the price at which Boehringer & Soehne would continue selling quinine would be sixty-one cents per ounce, and upon the further condition that the said Boehringer & Soehne would issue a circular to the trade to that effect. The trial court received the evidence offered by the defendants to establish this allegation over the plaintiff's objection and exception, but at the close of the defendants' case ruled that the proof did not make out a defense and directed a verdict for the plaintiff, to which ruling the defendants excepted.

The general rule which excludes parol evidence when offered to contradict or vary the terms or legal import of a written agreement is so well settled in this state as not to be a proper subject of discussion. It has, however, many exceptions and its full application has by the decisions of the courts been restricted within narrow limits.

In an action by a promisee, a promisor may show a failure of a consideration for the promise sued upon. (*Eastman* v. *Shaw*, 65 N. Y. 522.)

Or that the contract was destined to take effect only on the happening of some future event, and upon condition that it was to be binding only upon performance of a condition precedent resting in parol. (*Benton* v. *Martin*, 52 N. Y. 570–574; *Juilliard* v. *Chaffee*, 92 id. 535 : *Reynolds* v. *Robinson*, 110 id. 654.)

Or that the instrument sued upon was executed in part performance only of an entire oral agreement. (*Chapin* v. *Dobson*, 78 N. Y. 74; *Brigg* v. *Hilton*, 99 id. 570; *Routledge* v. *Worthington Co.*, 119 id. 592.)

And it has no application to collateral undertakings. (*Lindley* v. *Lacey*, 17 C. B. 578; *Jeffery* v. *Walton*, 1 Stark. 213; *Batterman* v. *Pierce*, 3 Hill, 171; *Erskine* v. *Adreane*, L. R. [8 Ch. App.] 755.)

The subject has been so fully considered in recent cases in this court that any discussion of the reason or policy of the

rule and its exceptions is now unnecessary. (*Johnson* v. *Oppenheim*, 55 N. Y. 280; *Wilson* v. *Deen*, 74 id. 531; *Eighmie* v. *Taylor*, 98 id. 288; *Snowden* v. *Guion*, 101 id. 458; *Schmittler* v. *Simon*, 114 id. 176.)

The general rule requires the rejection of parol evidence when its effect would be to cut down or destroy stipulations and undertakings entered into between parties and by them put in writing. All prior and contemporaneous negotiations and oral promises in reference to the same subject are merged in the written contract, and the rights and duties of the parties are to be determined by that instrument. When that has been executed it is then conclusively presumed that it contains the whole engagement of the parties.

In *Wilson* v. *Deen* it was said: "The very reason of the rule which excludes evidence of declarations is to avoid the uncertainties attendant upon such evidence, and equity will not set aside that important and well-settled rule for the purpose of relieving a party against a risk, which upon his own showing, if it be true, he has voluntarily incurred." And accordingly it was held in that case that a written lease would not be canceled upon the ground that contemporaneous or preceding oral stipulations in the reference to the furnishing of the house had not been performed.

In *Eighmie* v. *Taylor* (*supra*), it was said: "The writings which are protected from the effect of contemporaneous oral stipulations are those containing the terms of a contract between the parties and designed to be the repository and evidence of their final intention. If, upon inspection and study of the writing read, it may be in the light of surrounding circumstances in order to its proper understanding and interpretation, it appears to contain the engagement of the parties and to define the object and measure the extent of such engagement, it constitutes the contract between them and is presumed to contain the whole of that contract. *　*　*　When the writing does not purport to disclose the contract or cover it when in view of its language, read in connection with the attendant facts, it seems not designed as a written statement

of an agreement, but merely as an execution of some part or detail of an unexpressed contract, when it purports only to state one side of an agreement merely, and is the act of one of the parties only in the performance of his promise, in these and the like cases the exception may properly apply and the oral agreement be shown."

We have then but to examine the character of the writing executed by the parties and reading it in the light of their purpose and surroundings determine whether it falls within any of the exceptions to the general rule governing the construction of such instruments. The plaintiff's assignors were manufacturers and the defendants were merchants. In a contract between them for the sale and purchase of the manufactured article we should expect to find stipulations covering the quantity of the article sold, the terms and place of its delivery and the time, place and manner of payment of the purchase-money.

All these are found in the writing in question. The quantity of quinine sold was 15,000 ounces. It was all to be delivered at one time from a shipment to be made from the factory in Europe, in March, 1887. The price was fifty-nine cents per ounce, and it was to be paid in cash within ten days after the delivery of the goods.

Here is a complete agreement. It covers the obligations and duties of both parties, and it leaves nothing unprovided for. If it is to be controlled by evidence of the parol stipulation alleged in the answer, the entire contract is to be changed. The seller's obligation, instead of being limited to a delivery of the quinine at the time mentioned, is increased by a duty of raising the price of his goods and notifying the trade of that fact. His right to the purchase-money and the defendants' obligation to pay the same instead of being dependent upon a delivery of the quinine is made to depend upon another condition not mentioned in the written agreement and wholly independent of the delivery of the goods. In other words, a new contract is to be proven by parol, and the written engagement of the parties is to go for nothing. We are to go outside of

the instrument to find a stipulation upon which the validity of the contract is to depend, and then we are to enforce a parol stipulation to the absolute destruction of the written instrument. In the face of such a result it might well be asked what would be left of the rule which forbids parol evidence varying the terms of a written contract.

If we turn to the evidence that was received by the court, it will be seen that the oral stipulation was not a condition precedent to the validity of the contract. The evidence of William Reitlinger and of Mr. St. John, the broker, was to the effect that the price would be raised if the contract was made.

" If you make this contract the seller will issue a circular that the price will be sixty-one cents," was the evidence of Reitlinger as to the representations of the broker. St. John testified that Boehringer said to him " that having sold 15,000 ounces at fifty-nine cents, he would advance the price to sixty-one cents; he would sell but 15,000 ounces at fifty-nine cents, and then would advance the price to sixty-one cents. Upon that statement I predicated that made by me to Mr. Reitlinger."

From this evidence, which is undisputed, it is apparent that a sale was to precede the advance in the price. Instead of being a condition upon the performance of which the validity of the contract was to depend, the advance in price was to follow a contract which should bind the defendants to the purchase of 15,000 ounces at fifty-nine cents. And this was so understood by the defendants. The promise to advance the price was contained in a letter from the broker to the defendants, sent to them with the contract, and when Mr. Reitlinger was asked, on cross-examination, why he did not send back the letter and the contract and ask Mr. St. John to put the clause into the contract and have Mr. Boehringer and Soehne agree to it, he answered " I trusted Mr. St. John." That is, knowing the contents of the writing, defendants consented to accept it as it was, relying upon the parol promise of the broker to advance the price.

We are of the opinion that to except this case from the rule that written contracts cannot be controlled by contemporaneous

oral stipulations would be to set aside the rule altogether, with a result, as was said by Judge Rapallo in *Wilson* v. *Deen*, that " writings would be of little value, as they could always be controlled by oral evidence of what was said by the parties at the time of their execution."

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.