BAGLEY & SEWELL CO. *v.* SARANAC RIVER PULP & PAPER CO.

*(Supreme Court, General Term, Third Department.* November 30, 1891.)

1. PAROL EVIDENCE—CONTRACT WRITTEN IN PART ONLY.
   Upon statements by defendant as to the expected product of four "Scott Grinders," plaintiff made to it in writing a proposition to furnish certain machines guarantied "to take care of all the pulp produced" by such grinders, which proposition defendant accepted orally. *Held* that, the offer so accepted having been acted upon, the writing, so far as it expressed the agreement of the parties, stood as the contract between them, although not signed by both, but that parol evidence of defendant's contemporaneous statements was admissible to show the extent of the guaranty intended by them.

2. DAMAGES—BREACH OF WARRANTY.
   Plaintiff guarantied that certain machinery sold by it to defendant would "deliver pulp 50 % dry." *Held,* that the extra expense of transporting the manufactured product, by reason of increased weight caused by the failure of the machinery to produce pulp in such condition, could not be recovered by defendant in an action for the purchase price of such machinery.

Appeal from circuit court, Clinton county.

Action by the Bagley & Sewell Company against the Saranac River Pulp & Paper Company to recover the contract price on the purchase of certain machinery used in the manufacture of wood pulp. The defense set up in the answer was that the machinery was purchased by the defendant under a guaranty by the plaintiff as to the quantity and quality of work it would perform, and that the machinery did not fulfill the requirements of that guaranty. The jury rendered a verdict for the plaintiff. The defendant moved at the trial to set aside the verdict, which the court denied. Judgment was entered upon the verdict, and from that judgment, and the order denying a motion for a new trial, the defendant appeals. Affirmed. For former report, see 13 N. Y. Supp. 953, *mem.*

Argued before LEARNED, P. J., and LANDON and MAYHAM, JJ.

*Weeds, Smith & Conway, (Frank E. Smith,* of counsel,) for appellant. *Brown & Adams, (Elon R. Brown,* of counsel,) for respondent.

MAYHAM, J. Prior to October 30, 1889, plaintiff had negotiations upon the subject of the purchase by defendant of a machine such as the one in question in the action, and on that day the president of the plaintiff and one Clark, on behalf of the defendant, had a further interview upon that subject, and the plaintiff then presented Clark an offer in writing, of which the following is a copy:

"WATERTOWN, N. Y., October 30, 1883.

"*Saranac River Pulp and Paper Co., Cadyville, N. Y.*—GENTLEMEN: We will furnish f. o. b. Watertown 2 standard 72 wet machine, knocker screens, each with six plates, 12x36, for the sum of $2,300; or we will furnish two standard 72 wet machine, with new belt screens, for the sum of $2,900. We will guaranty the above machines to take care of all the pulp produced by 4 Scott grinders, and deliver pulp 50 per cent. dry.
"THE BAGLEY AND SEWELL CO.
"C. H. C."

The plaintiff proved, under defendant's objection, that at the time this proposition was made, Clark, who represented the defendant, told the president of the plaintiff, who submitted this proposition, that the defendant expected to make with the Scott grinders 3,000 pounds of dry pulp per day. It appeared by evidence offered by the plaintiff that the capacity of Scott grinders for production was from one-half ton to five tons per day, according to

the power applied, and that the plaintiff was informed that the one to be used by defendant was guarantied to grind 3,000 pounds per day. Soon after this negotiation, and the submission of the proposition, the proposed terms were accepted by the defendant, and the contract was closed upon that basis. The defendant now insists, as was insisted on the trial, that it was error to allow the plaintiff to prove what was said in the interview at the time the proposition in writing was submitted about the capacity of the Scott grinders, or what amount of work it was guarantied to perform for the defendant. The president of the plaintiff testifies that "the contract was closed upon the basis of the proposition we made to Clark." The plaintiff also proved, under defendant's objection, that at the time plaintiff told Clark that if they used blast screens, which was a new device, it would furnish them for $2,900, to take care of the product on the basis of 3,000 pounds each; and Clark stated that 3,000 pounds was all they expected to get and all they agreed to get.

It is clear from the evidence that the offer and its acceptance, as proved in this case, constitutes the contract between the parties. The plaintiff made the offer in writing, and the defendant accepted it by parol. The minds of the contracting parties must be deemed to have met upon the basis of the offer and acceptance, and it makes no difference that the writing was not signed by both the contracting parties in this case. The plaintiff's offer in writing having been accepted and acted upon, the writing, so far as it expresses the agreement of the parties, stands as the contract between them. *Long* v. *Railroad Co.*, 50 N. Y. 76; *Hinckley* v. *Railroad Co.*, 56 N. Y. 429. If we are right in this conclusion, it follows that the writing, so far as it defines and specifies the conditions of the agreement, is conclusive, and cannot, as to such matters, within well-settled rules of law, be varied, modified, or controlled by any prior or contemporaneous oral agreement. In *Engelhorn* v. *Reitlinger*, 122 N. Y. 81, 25 N. E. Rep. 297, the court reports the old and well-settled rule as follows: "All prior and contemporaneous negotiations and oral promises, in reference to the same subject, are merged in the written contract, and the rights and duties of the parties are to be determined by that instrument."

But this rule is subject to and must be so construed as to give effect to another equally well-settled rule, that, when the words used in their application to the instrument of which they are a part are not entirely intelligible, oral evidence of the circumstances attending its execution may, as between the parties, be admissible to aid in its interpretation. Can this qualification of the general rule be applied to the contract under consideration? The language is: "We guaranty the above machine to take care of all the pulp produced by four Scott grinders." Does this language necessarily import all that can be produced, the maximum amount capable of production, or the medium or the minimum amount? To hold that it meant the maximum would seem to require the interpolation into the agreement of some positively qualifying word not found in the text of the agreement, and the same may be said of the medium or minimum. The smallest amount mentioned was one-half ton. The largest amount was five tons per day. There is therefore an apparent obscurity or ambiguity in the wording of the written offer, which we think justified the admission in this case of evidence tending to show what the parties intended and understood to be the production by four Scott grinders. In *Schmittler* v. *Simon*, (N. Y. App.) 21 N. E. Rep. 162, upon the subject of the admissibility of oral evidence to interpret a writing, the court says: "For the purpose of the construction of the instrument, no words can be added or taken from its provisions; but where the words used in their application to an instrument of which they are a part are not entirely intelligible, parol evidence of the circumstances attending its execution may, as between the parties, be admissible to aid in the interpretation, in its application of the language so used;" in this case, a draft, somewhat ambiguous in terms, in which the drawee

is named as executor, with directions to charge against the drawer of his "mother's estate." It was held that parol evidence was competent to show against what fund the draft was drawn. *Schmittler* v. *Simon, supra; Fish* v. *Hubbard,* 21 Wend. 651; *Field* v. *Munson,* 47 N. Y. 221. Within the principle of these cases, we think the evidence offered in this case was competent, and that the objection to its reception was properly overruled. The same reasons apply to the evidence of correspondence between the parties. They were competent as bearing upon questions of production, as understood and agreed between the parties.

Nor do we see any error in the charge of the trial judge as bearing upon that question or his refusals to charge. The defendant insists that the court erred in excluding evidence offered by it on the question of damages. The proposition was that, by reason of the machine failing to fulfill the terms of the guaranty in not making the pulp 50 per cent. dry, the weight of the manufactured article was increased, and, in consequence of such increased weight, the expense of transporting the pulp was greater, and that that difference constituted an element of damage, to be recovered in the action. This evidence was, I think, properly excluded by the judge. The ordinary rule for the measure of damage on a breach of warranty is the difference in value between the article as recommended and as it really was. The defendant elected to retain the machine, and not return the same, and, under the circumstances of this case, if there is a breach of warranty, must make its claim for damages under this rule, and, as we think, cannot recover for remote consequential damages which it may claim to have sustained by the use of the machine. When a sale of goods is made in good faith, with warranty of quality, a vendee is not bound to rescind the contract, but may retain the goods and rely upon the warranty. *Brigg* v. *Hilton,* 99 N. Y. 517, 3 N. E. Rep. 51. This is what the defendant has done in this case, and it can invoke only the ordinary rule applicable to damages in breach of warranty. That rule is stated above. *Muller* v. *Eno,* 14 N. Y. 597; *Voorhees* v. *Earl,* 2 Hill, 288; *Cary* v. *Gruman,* 4 Hill, 625.

Various requests to charge on the question of damages were made by the defendant, and refused by the court, and propositions were charged, to which the counsel for the defendant excepted; but we find no error in the charge for which we should interfere with the judgment. The jury found with the plaintiff upon the question of guaranty of capacity of the machine, and, as the case is here upon a bill of exceptions, no questions of fact are open for our consideration. On the whole case, we see no error for which the judgment should be reversed. Judgment affirmed, with costs.

LEARNED, P. J., concurs.

LANDON, J., (*concurring.*) The acceptance of this written proposition being oral, the declarations of the defendant accompanying that acceptance, and defining such of the terms of the proposal as would be unintelligible without definition, are part of the acceptance, and thus part of the contract. The written proposition, with guaranty "to take care of all the pulp produced by four Scott grinders," requires evidence of the productive capacity of such grinders, in order to make the contract intelligible. The evidence shows that such grinders are of different capacities. If the parties fixed a capacity as the basis of their agreement, proof of that fact affords us the measure of the capacity referred to in the written proposal. The declarations of the defendant during the negotiations stating that capacity, upon which the plaintiff relied in making the proposal, are the best evidence of it as between the parties. Such declarations do not vary the writing; they interpret it. In *Corse* v. *Peck,* 102 N. Y. 513, 7 N. E. Rep. 810, the oral testimony did not interpret the writing; it varied it from a contract "to run steadily" to a contract

to "run often enough to deliver 500,000 brick a month." In *Engelhorn* v. *Reitlinger*, 122 N. Y. 76, 25 N. E. Rep. 297, the oral testimony offered was not to interpret the contract, but to introduce a new condition into it.    These cases are not in conflict with the ruling in this case; they serve to illustrate its propriety.    There was no error in the exclusion of evidence by the defendant touching the increased freight charges the defendant was obliged to pay because of the failure "to deliver the pulp 50 per cent. dry."    This seems to have been one factor tending to show actual damages, and it was accompanied with offers of evidence tending to show that the guaranty of such dryness was made with reference to the location of the defendant's mills with respect to facilities of freight transportation.    The actual production was 45 per cent. dry, and plaintiff gave evidence tending to show that that was more economical, from a business point of view, than 50 per cent. dry.    The defendant did not offer to show that the-net result of all the advantages and disadvantages of the 45 per cent. dryness was a loss, but simply offered to show a fact which, without the addition of other related facts, did not appear to be material.    I therefore concur in affirmance.