## William H. Bessling & Co. v. Houston & Texas Central Railway Company.

Decided April 13, 1904.

**1.—Contract—All Rail Route—Water Route.**

Written instructions given the agent of a railway by a cotton shipper to send the cotton of such shipper by an all rail route, to which the agent assented but at the same time told the shipper that the railway would disregard such instructions and send the cotton part way by a water route according to their custom, did not constitute a contract binding the company to an all rail shipment, but amounted only to an instruction or direction of the shipper.

**2.—Bills of Lading—Choice of Route.**

Bills of lading specifying no particular route for a certain shipment of cotton, give the carrier the right to choose the route.

**3.—Railway—Agent—Authority—Route.**

The agent of a railway has authority to bind the company as to the routing of a through shipment in the absence of knowledge by the shipper of limitation on his powers; but where he notified a shipper demanding an all rail shipment that the company would not regard such billing by him but would send it partly by water, this was notice to the shipper of his lack of authority to contract for an all rail shipment.

**4.—Carrier—Act of God—Deviation.**

Where there was no contract by the carrier for all rail transportation and the bill of lading was silent as to the route, the selection of a route partly by water, whereon the goods were lost by act of God, did not make the carrier liable.

Appeal from the District Court of Limestone. Tried below before Hon. L. B. Cobb.

*Etheridge & Baker,* for appellants.

*Williams & Bradley, Andrews & Ball,* and *H. L. Borden,* for appellee.

JAMES, Chief Justice.—Plaintiff alleged that he was a buyer and shipper of cotton at Mexia, that in August, 1900, he gave defendant's agent at that place written notice to ship all of his cotton for and during the years 1900 and 1901 from Mexia to Galveston all rail, and not to divert any of it at Houston and not to transport or have same transported from Houston to Galveston by water. That defendant, through its said agent, assented to said written request, which plaintiff alleges constituted a written contract between plaintiff and defendant to that effect. That on September 4th he delivered to defendant for transportation from Mexia to Galveston 100 bales of cotton, which were received under said general contract, upon which plaintiff relied. That after the delivery and acceptance of the cotton defendant executed and delivered to plaintiff two bills of lading dated September 4, 1900, covering said cotton; that he, relying on said general contract, and that these bills of lading were in accordance therewith, did not inspect them, said bills being in fact silent as to the method of shipment; that the shipment was made in pursuance and by virtue of the said previously existing contract; that the bills of lading are wholly without consider-

ation, in that they were neither executed nor delivered until after the cotton had been tendered and accepted for transportation by an all-rail route to Galveston under said existing contract, and they should be reformed so as to conform to the intention of the parties, and that the bills of lading were so written through the fraud, mistake or inadvertence of said agent, etc. That defendant violated said express agreement by diverting the cotton and forwarding it from Houston to Galveston by a craft plying on Buffalo Bayou which was wrecked (in the storm of September 8, 1900,) and certain of the cotton lost and the remainder damaged, for which he asks damages.

No question arising on the pleadings, we shall state the substance of the judge's conclusions: Plaintiff had for a number of years been shipping cotton by defendant's line to Galveston, and defendant had carried it to Houston, and at the latter place forwarded it to Galveston by the Houston Direct Navigation line, a water route. Plaintiff had during this time given no direction for routing cotton beyond defendant's line and defendant usually forwarded it by the Houston Direct Navigation line. Plaintiff had become dissatisfied with this, and about August 20, 1900, before shipping any cotton that season, delivered to defendant's station agent at Mexia a written order to route all his cotton destined for Galveston by all rail and not by said water route, "which order the agent orally agreed to, at the same time telling plaintiff that while he would bill the cotton as directed, the office in Houston generally took their own route and would pay no attention to him." (We have quoted the language of the findings.) Said agent by virtue of his general authority to represent defendant in its business as a common carrier had authority to accept and agree to said order and bind the defendant thereby. That on September 4th plaintiff delivered the cotton for transportation to Galveston to said agent at Mexia and made out the bills of lading therefor, which did not designate the route or means by which it should go from Houston,—gave no oral or other direction at the time, but relied on said general direction. Defendant delivered the cotton at Houston to the navigation company, and the barge was wrecked on the voyage to Galveston by an unprecedented storm which the court finds was the act of God. The judge's conclusions of law are as follows:

"1. Defendant's agent at Mexia had authority to legally bind the defendant to forward plaintiff's cotton by rail under the contract covering the shipment for the season.

"2. The direction in writing made out, signed and delivered by plaintiff to such agent and orally agreed to by him was a written contract between the parties, notwithstanding the agent at the time expressed his belief that defendant would not abide by the direction.

"3. The bills of lading for shipment of said 100 bales of cotton made out by plaintiff, signed by defendant's agent and accepted by plaintiff, were contracts in writing, and having relation to the particular transaction must be regarded as superseding the general contract

to ship by rail, and such bills not stipulating for the routing of the cotton, the defendant had the right to choose the route as though the bills expressly provided that defendant might select the route.

"4. If the general contract regarding all shipments for the season was not superseded by the particular agreement for shipment of the 100 bales, the defendant is liable for the damage on grounds of deviation in the routing of the cotton although the proximate cause for such damage was the act of God."

*Opinion.*—There is no doubt that the agent at Mexia had power, by virtue of his ostensible authority, to bind the defendant in a contract to forward this cotton from Houston to Galveston by rail. But it is equally free from doubt that if the agent had no authority to do this and the plaintiff had notice of such lack of authority, defendant would not be bound by it as its contract. Plaintiff's own testimony in reference to the letter which he had in person delivered to the agent was, "that all our shipments, without exception, should go from Mexia to Galveston via all rail and not by the Houston Direct Navigation Company." That the agent agreed to it, but at the same time he told plaintiff "that he would bill our cotton, but that the office in Houston generally took their own route and would not pay any attention to him." This, coupled with another fact which was in evidence, viz., that defendant at Houston forwarded the cotton by water route although the Mexia agent noted on the way bills "all rail," shows that the latter was in fact lacking in authority to bind defendant by a routing over a particular route from Houston. Plaintiff had notice of this limitation on the agent's authority from what the latter said to him. Therefore, if the agent undertook, as found by the court, to contract in behalf of defendant for the carriage by rail from Houston and plaintiff under the circumstances treated it as a contract, he did so subject to the event of its being disregarded by defendant.

However this may be, we are unable to hold that the transaction was a contract at all, and particularly not a written contract. The letter which was signed by plaintiff alone, if assented to and acted upon, would have the character of a contract in writing between the parties. But the assent would have to exist and be unqualified. The evidence is that the agent assented, at the same time explaining that defendant was not going to recognize such routing. So far as assenting for the railway company, we think he did not do it, nor undertake to do it. He in effect gave plaintiff to understand that the desired routing would be disregarded by defendant. See Hinckley v. Ry. Co., 56 N. Y., 429. The view we take of the evidence is that the transaction was clearly no contract, but that the utmost effect which is proper to give the letter is to treat it as an instruction or direction of the shipper.

Upon this theory the judgment rendered was correct. The bills of lading evidenced and constituted the contract between the parties. The averments of fraud, mistake, etc., touching the bills of lading were

eliminated by undisputed evidence of the fact that the instruments were prepared by plaintiff himself, and are no longer relied on. The bills are silent as to any particular routing, and their legal effect as written was that defendant could forward the cotton from Houston by an agency of its own selection. It has been held that it is not permissible to vary the terms or legal import of bills of lading by proof of such transaction as the direction in question. Wells, Fargo & Co. v. Fuller, 4 Texas Civ. App., 213; Galveston H. & S. A. Ry. Co. v. Silegman, 23 S. W. Rep., 298.

Not only do these bills of lading fail to specify any particular means for transporting the cotton from Houston to Galveston, but they contain provisions which seem to contemplate rather than exclude the use of water transportation, which makes the above cases the more applicable. See Hinckley v. Railway Co., 56 N. Y., 429, which is in many respects similar to this case on the facts.

Plaintiffs drew the contracts themselves, omitting therefrom any reference to any particular route from Houston, and in this condition accepted them. There was no fraud or mistake entering into the transaction. They had no other contract with defendant, written or oral, on the subject. They had, it is true, a filed written instruction for their shipments to go by all rail, but they prepared and accepted these contracts which, in their terms, permitted defendant to follow its own preference in the matter.

There are cases which deny the right of a shipper in a shipment of this character to direct over what connecting route the freight shall be carried. See Post v. Southern Ry. Co., 52 S. W. Rep., 301. The authorities are found to be conflicting, however, and the question does not seem to have been directly decided by the Supreme Court of this State. But in the circumstances under which the bills of lading in question were taken, we think the direction or instruction can not be held entitled to any effect in reference to the matter with which these bills of lading deal.

The petition proceeds upon the theory that the letter was a written contract which affected and governed all prospective shipments of cotton by plaintiff that season. As we hold it was not a contract, we need pursue this theory no further. We have had some doubt as to whether plaintiffs could, upon their pleadings, recover on any other theory, having based their case on the same being a contract. But as the petition alleges the facts upon which they seek relief we deem it proper to consider the effect, upon the shipment, of said letter as an instruction or direction.

The judgment is affirmed.

*Affirmed.*

Writ of error refused.