COHEN v. MORRIS EUROPEAN & AMERICAN EXPRESS CO., Limited.

(Supreme Court, Appellate Division, First Department. June 28, 1912.)

1. CARRIERS (§ 158*)—LIMITATION OF LIABILITY—CONTRACTS.

Plaintiff, having furs stored in Italy, arranged with an express company in New York to carry them to New York, and gave it the storage receipt, and received in exchange a receipt reciting that the company had received the storage receipt for furs to be brought to New York, and providing that the value was not more than $50 unless a greater value was stated therein, and that the company should not be liable for more than the value so stated, nor for more than $50 if no value was stated therein. No greater value than $50 was stated in the receipt. *Held*, that the receipt given by the company was a contract of carriage limiting its liability to $50 because of the absence of a declaration of a greater value.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 663–667, 699–703½, 708–710, 718, 718½ ; Dec. Dig. § 158.*]

2. EVIDENCE (§ 441*)—PAROL EVIDENCE—WRITTEN CONTRACTS.

A written agreement for the transportation by express of goods may not be varied by a prior parol agreement which is merged in the written agreement.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1719–1845, 2030–2047; Dec. Dig. § 441.*]

3. CARRIERS (§ 158*)—LIMITATION OF LIABILITY—CONTRACTS.

A shipper of goods by express, under a contract limiting liability for loss to a specified sum, cannot recover a greater sum in case of loss, though the contract is offered in evidence by the carrier.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 663–667, 699–703½, 708–710, 718, 718½ ; Dec. Dig. § 158.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Appellate Term.

Action by Solomon L. Cohen against the Morris European & American Express Company, Limited. From a determination of the Appellate Term (132 N. Y. Supp. 347) affirming a judgment for plaintiff and order denying a new trial, defendant appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Edward V. Conwell, of New York City (William D. Guthrie, of New York City, on the brief), for appellant.

Charles E. Le Barbier, of New York City, for respondent.

CLARKE, J. This is an appeal from a determination of the Appellate Term affirming a judgment of the City Court entered upon a verdict 'for plaintiff for $870, in an action to recover the value of certain furs undertaken to be forwarded by the defendant and not delivered, and an order denying a motion for a new trial.

[1] The plaintiff's wife and daughter were in Italy in 1908, and sent for their furs, consisting of two sealskin coats, two muffs, and three stoles. They stored these furs in a storage warehouse in Milan in June, 1909, and received a warehouse receipt therefor, written in Italian, and thereafter returned to this country.

In December, 1909, the plaintiff went to the office of the defendant in the city of New York, and saw Mr. Kammerer, the clerk in charge. Over defendant's objection that the testimony tended to vary a written contract, plaintiff testified as follows:

"I said to him that my family had left their furs in Europe. I said: 'I have here a receipt, a storage receipt by a very responsible concern there. What shall I do with this? Will your company handle it, or will I send the receipt to Europe and have some one there get my furs and send them to me?' * * * He said: 'Mr. Cohen, that is our business. We do these things regularly every day. We will take charge of the receipt, and we will get the furs here.' I said: 'All right. * * * There are seven pieces altogether, belonging to my wife and daughter, among which are the furs which I sent through you to them last year and for which you advised me to get a custom house certificate.' * * * He then asked me where the furs were. I told him they were on storage in a fur establishment in Italy. He said, 'Have you a receipt?' I said, 'Yes,' and I showed him the receipt. He said: 'This will be sufficient. We will take it and get it and bring them to you.' He said, 'How much are the charges on the furs by the storage company?' I said: 'I cannot tell exactly. My wife said they would probably be about twenty-five francs, * * * something like that.' I said, 'Whatever it is, pay it, and I will reimburse you when they come.' He said, 'That will be all right, Mr. Cohen.' * * * I said: 'These are very valuable furs. There are only seven pieces of them, but they are all good pieces. * * * The receipt calls for seven particular and specific pieces. See that you get this seven pieces from the company and then ship them to me.' Mr. Kammerer said he would do it. He said they would take the receipt and ship them. I said, 'Be very careful with them and see that you get my furs and each piece, and check them off and insure them against all loss and damage, and I will pay you what you lay out to the fur company, for the insurance and for the expressage and the bringing of them here and the expense that you may incur.' He said: 'All right, Mr. Cohen, we will do this.' I said to him, 'Do you want the certificates that I got through you?' He said: 'No, keep those until the furs come. I will take the receipt and bring

the furs here and will notify you when they come.' * * * I then delivered to the defendant my storage warehouse receipt of the seven pieces of furs, which they accepted. ⁂ ⁂ ⁂ He looked at the receipt, and, looking at the receipt, he saw that there were three pieces of the seven that were seal, and he said, 'Mr. Cohen, you understand that seal cannot be brought into the country unless you have certificates?' I said, 'Yes, if you will remember I asked you about that before, and you told me to get the certificates, and I have them.' He said: 'I recollect. That will be all right. Keep the certificates until the garments come, and then we will take them and pass them for you.' I asked him for my receipt and then went away."

## Under cross-examination he testified:

"I knew that when I had dealings with the Morris European & American Express that they were forwarders; that they sent goods to Europe and back. I never paid anything to the company on this transaction. I paid the defendant company for every transaction except this last one; they never asked me to pay. The warehouse receipt I have testified about was in Italian. * * * There was a statement on that receipt of what the value of this fur was, I think in francs or lire. A lire is about 19 cents. Q. How many lire did this warehouse receipt state the value of those things to be? A. I don't remember the amount of lire, but I figured it about $1,500. Q. If you don't remember the amount of lire, how did you figure out the amount of dollars? A. My wife figured it out and wrote me when she put the furs there. It was written there, and I figured it out. We figured about 20 cents to a lire, and it was what would make $1,500, about five times 1,500, about 7,500 lire. Q. You stated you got a receipt when you were down there and had this talk with Mr. Kammerer? A. Yes, sir. Q. I show you a paper and ask you if that is the receipt that you got? A. Yes, sir."

Defendant's counsel then offered it in evidence and it was received as Exhibit A.

"To the Court: I gave him the warehouse receipt, and he gave me this."

This receipt was dated December 17, 1909. There is printed at the top conspicuously:

"The company's charge is based upon the value of the property, which must be declared by the shipper."

Then in larger letters, "Nonnegotiable bill of lading." The blank is filled in to read:

"Received from S. L. Cohen, 60 West 10th street, storage receipt for 7 pieces fur apparel stored with Ille Pozzi, Milan, Italy, to be brought to N. Y."

Then there is a blank "valued at $————." And under the blank for the description, etc., in large letters, "Not insured unless so stated in this receipt." Then:

"Which the company agrees to carry upon the following terms and conditions, to which the shipper agrees and as evidence thereof accepts this bill of lading. (1) In consideration of the rate charged for carrying said property, which is regulated by the value thereof and is based upon a valuation of not exceeding fifty dollars unless a greater value is declared, the shipper agrees that the value of said property is not more than fifty dollars, unless a greater value is stated herein, and that the company shall not be liable in any event for more than the value so stated, nor for more than fifty dollars if no value is stated herein."

And then at the bottom, outside of the black line which incloses the body of the bill, is again printed in large face type:

"Liability limited to $50.00—unless a greater value is declared."

When the goods reached this country it was found that only two of the pieces were contained in the package, the daughter's coat and an ermine muff. The mother's coat and another muff and the three stoles were not delivered. Testimony was given as to value by Mr. and Mrs. Cohen and by Kaufman, their furrier, and his testimony put the present value at $870, the amount the jury found.

Kammerer was called to the stand for the defendant and testified that the nature of the business of the defendant was that of custom house brokers and forwarding agents.

"I remember the time when Mr. Cohen called upon me in connection with some furs that he said were on storage in Italy. He said that some members of his family had left some furs on storage in Milan and asked if we could arrange to have them brought over here. I told him we could. I asked him if he had a warehouse receipt for them. He said he did. I told him if he would leave that warehouse receipt with us we would send over there and have the furs brought over or sent over. The next step, if I recall it correctly, Mr. Cohen brought a warehouse receipt to our office. I took that receipt and sent it to a forwarding agent at Genoa, Italy, with whom we do business, and asked him to secure the goods from the warehouse company which was called for by that receipt, and forward them to us in New York so we could make delivery of them to Mr. Cohen. * * · * After Mr. Cohen called there and discussed this matter with me, I gave him this receipt marked defendant's 'Exhibit A' for the storage receipt that he gave me."

The defendant made an offer of judgment of $50 with interest from the 17th of December, 1909, which was refused, and it made the appropriate motions and took the appropriate exceptions to save the point that its liability was limited by the contract, evidenced by its receipt, to $50. The court charged as follows:

"A limited liability is, under the law of this state, allowed to be contracted for by parties even as against the negligence of a party who contracts, but there must be found to be a contract for the limited liability; that is, it is not inferable from a mere tender of a paper. It is not inferable from the mere sending of a check, such as is used frequently in the transfer of baggage. It is inferable where the surroundings of the transaction indicate no other contract between them, not where it is a mere token or receipt of a certain article or of certain goods, or, in this instance, of the warehouse receipt, unless it be proved by the defendant that that was the contract. Unless you find against the plaintiff that there was a special contract with reference to the delivery of these goods, then the express receipt containing a limited liability clause would not be binding so as to limit the liability to $50, but if you find that the proof sustains the claim that the defendant makes, that at the time of this delivery there was no conversation with reference to the contract, other than a delivery of this receipt, then you may infer that was the contract between them. If you find that the plaintiff has sustained his claim that he had an oral contract with this defendant's manager with reference to the insurance, method of delivery, and the amount of value, then the express receipt would not be effective to limit liability, and in that instance, provided you find both of those issues of fact between plaintiff and the defendant in plaintiff's favor, and in finding you must find that he has the preponderance of the evidence upon those points, then you will address yourselves to the rule of damage which I will point out, and then only, because unless liability is to be inferred from the proof that I have outlined, and unless limited liability is to be stricken from your verdict under the method that I have pointed out as necessary under the proof, then there is no damage other than that limited liability to be adverted to, but if you find those issues, that is the issue of the special contract between the plaintiff and the defendant, and the issue of the loss of the goods, under the

inferences that I have said may be deducible as a matter of logic or law, then the rule of damages in this case is that the plaintiff is entitled to what is called the usable value of these goods."

It will thus be seen that the learned court left the issue to the jury as to whether a special oral contract had been made, and instructed them that, if they found it had, plaintiff was entitled to the full value.

"Defendant's Counsel: I request your honor to charge that all previous parol negotiations between the parties in this case were merged in the receipt, or contract, marked defendant's 'Exhibit A.' The Court: I refuse except as indicated. (Exception.) Defendant's Counsel: I request your honor to charge the jury that the acceptance of this receipt or contract, marked defendant's 'Exhibit A' by the plaintiff, made it binding upon him, and constitutes the only evidence of a contract between the parties. The Court: Refused, the jury may find otherwise from the facts. (Exception.) Defendant's Counsel: I also except to your honor's leaving to the jury the question whether or not the contract marked 'Exhibit A' was entered into between the parties. The Court: I leave them to find whether that was a contract, or whether it was a mere receipt or token, as indicated by the circumstances of the transaction, as they find them from the oral proof. Defendant's Counsel: I except to your honor's ruling, and I except to your honor's leaving the question of the contract to the jury. I request your honor to charge the jury that the plaintiff cannot recover in this case in any event more than $50 with interest. (Refused. Exception.)"

## Upon appeal to the Appellate Term, that court said:

"The plaintiff-respondent contends that the defendant's receipt was merely a receipt for the storage receipt and not for the goods, and therefore it carried the goods without any agreement having been made as to the extent of its liability. This is not the fair or natural construction to be placed upon the agreement. It was never intended that the defendant should transport the storage receipt. The evident intent, as appears by the receipt given by defendant, was that the defendant should get the goods upon the presentation of the storage warehouse receipt at Milan, and then transport them to New York. The clause in the receipt providing that the defendant should not be liable in excess of $50 unless a greater valuation were declared by the shipper is part of the contract between plaintiff and defendant, but it is inoperative because of the fact that the storage warehouse receipt delivered by plaintiff to defendant at the time of the making of the contract between plaintiff and defendant, and referred to in said contract, declares the value of the furs to be 7,500 lire, or about $1,500, an amount in excess of the amount of the judgment herein. It is not necessary that the declaration of value should be in any particular form. An oral declaration would be sufficient. All that is required is that the shipper should apprise the carrier of the valuation in excess of $50 placed by the shipper on the goods so that the carrier may, if it desires, charge a higher rate for the transportation thereof. An increased valuation having been declared by the shipper to an amount in excess of the plaintiff's recovery, and plaintiff having established the receipt of the goods by defendant and the failure of defendant to perform its contract, the judgment should be affirmed."

It will be noticed that the learned Appellate Term did not proceed upon the theory of the plaintiff that there was an entire oral contract, irrespective of the receipt, and that that was a mere token, but upon the proposition that the receipt was the contract between the parties, but that the limitation therein contained was avoided by reason of the fact that the plaintiff had declared the value of the articles to be shipped thereunder; but the court failed to give any

effect to the provision of the contract which required not only à declaration of value, but that:

"The shipper agrees that the value of said property is not more than $50 unless a greater value is stated herein, and that the company shall not be liable in any event for more than the value so stated, nor for more than $50 if no value is stated herein."

It is not entirely plain that the value was declared. The only evidence is the testimony of the plaintiff that on the Milan storage warehouse receipt, which was in the Italian language, there was a statement of valuation in lire. He could not remember the amount, but said his wife had figured it about $1,500, and on that he figured about 7,500 lire. Considering the nature of the defendant's business, and in the absence of proof to the contrary, it may not be a violent assumption to infer that Mr. Kammerer, the defendant's agent, knew the value of a lire. Assuming then that there was a declaration of value, and this receipt was 'the contract, the question is: Can there be a greater recovery than for the amount limited; the value of the goods not being stated in the contract? If the receipt is the contract, the provision requiring the value to be stated therein is as much a part thereof as the requirement that the value be declared. That the receipt is the contract seems clear upon the following authorities:

In Long v. New York Central, 50 N. Y. 76, Allen, J., said:

"The property was delivered to and the receipt or contract accepted by the party representing the plaintiff. * * * The verbal contract was merged in the written agreement, and the latter must be taken as the evidence, and the sole evidence, of the final and deliberate agreement of the parties. * * * All prior negotiations and agreements were superseded by the formal written agreement; and by it, and it alone, in the absence of mistake or fraud, the duties and liabilities of the parties must be regulated. * * *"

In White v. Ashton, 51 N. Y. 280, of the bill of lading the court, Hunt, C., said:

"Such was the written contract, and it was not competent to vary it by parol evidence of a different understanding. Its legal effect is as unassailable by parol as are its express terms. The various offers made by the plaintiff to prove 'that the defendants agreed by parol, before the bill of lading was signed, that they would transfer the barley by the inside or canal route,' was properly excluded. The admission of the evidence would have been in violation of the plainest rule of law."

In Belger v. Dinsmore, 51 N. Y. 166, 10 Am. Rep. 575, in the statement of facts it is stated:

"There was no valuation of the property so delivered, nor of any part thereof expressed in the said receipt, nor was it specified therein that the same or any portion thereof had been specially insured."

Lott, C., said:

"The other objection was that there was no evidence adduced that the knowledge of the contents of the receipt was ever brought home to the plaintiff, and it was insisted that evidence beyond the receipt itself on that point should be adduced. This position is untenable. The presumption of law is that a party receiving an instrument, in the transaction of any business, is acquainted with its contents."

After describing the receipt, the court proceeded:

"A party accepting such an instrument, as has been already shown, declares his assent, by such acceptance, to those terms and conditions. They thereby become obligatory on both parties, and prescribe their mutual rights and obligations. On the application of that rule to this case, the plaintiff assented (by omitting to have a different value expressed in the instrument) to the valuation of the property in question at the sum of $50, and to the restriction and limitation of his claim and demand for damages, in case of its loss, at that sum. Such liquidation of its value was for the advantage of both parties, to guard against controversy or difference of opinion in estimating it, in case of loss and damage, and as a protection against fraud. * * * The material fact in this case appears to be entirely overlooked that the plaintiff, by accepting the receipt as evidence of the defendant's obligation and liability, gave his assent to what was considered as a proposal, and to all its terms and conditions, and that it thereby became operative and effectual as a contract."

In Hinckley v. New York Central, 56 N. Y. 429, plaintiff's evidence tended to show that he gave oral directions to have the goods forwarded by railroad. The goods arrived safely at Buffalo and were forwarded by steamboat and were destroyed by the burning of the boat. A receipt was offered in evidence by defendant's counsel, who thereupon moved to strike out plaintiff's evidence as to directions. This was denied by the court. Folger, J., speaking of the receipt, said:

"So that the question to be determined is whether this paper did express the only and whole contract of the defendant with the plaintiff's assignor. There is no dispute but that it expresses the whole contract of the parties, save in one particular."

The court cited Long v. New York Central, and concluded:

"Hence the motion of the defendant, in this case, to strike out all the testimony of the plaintiff which contradicted or was in conflict with the written receipt, was proper,"

—and the judgment was reversed.

In Kirkland v. Dinsmore, 62 N. Y. 171, 20 Am. Rep. 475, a package had been received under a receipt which provided, among other things, that the company was not to be liable for any loss occasioned by the dangers of railroad transportation or ocean or river navigation, or by fire or steam. The package was placed in a safe with other money packages on board the steamer "General Lyon," and while on the voyage she caught fire, and with her cargo was destroyed. Andrews, J.:

"But the law does not forbid contracts between carriers and shippers fixing the terms upon which goods shall be carried, and when there is a special contract it takes the place of the contract which the law in the absence of the special agreement implies, and so far as it speaks is to be resorted to to ascertain the rights and liabilities of the parties. It has been repeatedly adjudged in this state that the acceptance by the shipper, on the delivery of goods for transportation to a carrier, of a receipt or bill of lading signed by the carrier expressing the terms and conditions upon which they are received, and are to be carried, constitutes, in the absence of fraud or imposition, a contract controlling the rights of the parties. Collender v. Dinsmore, 55 N. Y. 200 [14 Am. Rep. 224]; Magnin v. Dinsmore, 56 N. Y. 168; Hinckley v. N. Y. C. & H. R. R. R. Co., 56 N. Y. 429. * * * The receipt was prepared by using a printed form of the company, and, when

completed by filling in the written portions, was signed by the defendant's agent and delivered to the plaintiff, who accepted it without objection, and forwarded it to the consignee of the package, who retained it until after the loss. * * * It is plain that upon proof of the receipt and of the loss by fire, under these circumstances, the defendant was, within the cases cited, prima facie exempt from responsibility. * * * Can it be said that he is not bound by and did not assent to the limitations in the contract because he took the paper without reading it and did not know its contents. The conditions are not unreasonable or unusual. They relieved the defendant from the stringent liability of an insurer, and, on the other hand, no price for the service having been agreed upon, plaintiff was only bound to pay for the carriage a compensation measured by the value of the service in view of the diminished risk assumed by the company. It is true that a contract implies an assent to its terms by the contracting parties, but a party may assent expressly or by implication. * * * He cannot escape from the terms of a contract, in the absence of fraud or imposition, because he negligently omitted to read it, and, when the other party has a right to infer his assent, he will be precluded from denying it to the other's injury. * * * We are of opinion that the plaintiff, under the circumstances of this case, is conclusively presumed to have assented to the terms contained in the receipt taken when the money was deposited, and that the judgment below should be reversed."

In Hill v. Syracuse, Binghamton & N. Y. R. R. Co., 73 N. Y. 351, 29 Am. Rep. 163, Church, C. J., said:

"The decision of this court in the recent case of the Germania Fire Ins. Co. v. Memphis & Charleston R. R. Co., 72 N. Y. 90 [28 Am. Rep. 113], is decisive in this case that the receipt or bill of lading delivered to the plaintiff is to be regarded as the contract between the parties, instead of the parol agreement alleged to have been made previously, but on the same day, between the plaintiff and the person in charge representing the agent. * * * By accepting the contract without objection, the other party had a right to assume that he assented to its terms, and the fact of not reading it cannot be interposed to prevent the legal effect of the transaction."

In Hoffman v. Metropolitan Express Co., 111 App. Div. 407, 97 N. Y. Supp. 838, the plaintiff's evidence tended to show an oral contract to carry the property by van without rehandling from her residence in the city of New York to a place in New Rochelle. The defendant denied the special contract and sought exemption from liability under the usual receipt or bill of lading claimed to have been delivered to the plaintiff upon the receipt of the property. Mr. Justice Miller writing for the Appellate Division in the Second Department, said:

"By the charge of the learned trial court the verdict of the jury was made to depend upon two questions of fact, viz., * * * whether the parties agreed upon the terms contained in the shipping receipt claimed to have been delivered by the defendant to the plaintiff."

And, after quoting from the charge held to be erroneous, proceeded:

"The proposition is now too well settled to admit of discussion that the receipt or bill of lading is the contract (Long v. N. Y. C. R. R. Co., 50 N. Y. 76; Hinckley v. N. Y. C. & H. R. R. R. Co., 56 N. Y. 429), and that the shipper who receives it without objection, in the absence of misrepresentation, fraud, or concealment, is bound by its terms and cannot set up his failure to read it in order to prevent its legal effect. Belger v. Dinsmore, 51 N. Y. 166 [10 Am. Rep. 575]; Germania Fire Ins. Co. v. M. & C. R. R. Co., 72 N. Y. 90 [28 Am. Rep. 113]; Hill v. S. B. & N. Y. R. R. Co., 73 N. Y.

351 [29 Am. Rep. 163]; Mills v. Weir, 82 App. Div. 396 [81 N. Y. Supp. 801]. * * * If the receipt was given to her, she was bound to know its contents, unless prevented by some artifice or misrepresentation. * * * The charge authorized the jury to find that, even if the receipt was delivered as claimed, it did not constitute a contract between the parties unless the plaintiff knew its contents so that there was a meeting of the minds, or at least unless in the exercise of due care she ought to have apprised herself of its contents. We might say that due care required the shipper to read a receipt delivered to him under such circumstances, but injecting that question into the case could have had no other effect than to mislead the jury, particularly where the court in the main charge had distinctly called attention to the fact that the receipt was not the agreement of the parties unless the plaintiff knew its contents."

In Bates v. Weir, 121 App. Div. 275, 105 N. Y. Supp. 785, Mr. Justice Miller said:

"If she repudiates a part of the transaction, she must repudiate it all, in which case she cannot assert that the defendant ever became as to her a common carrier or a bailee for hire, or that it owed her any duty greater than that of a gratuitous bailee, which, as I have said, was the duty not to destroy nor injure by gross negligence or some willful act."

In Jonasson v. Weir, 130 App. Div. 528, 115 N. Y. Supp. 6, Mr. Justice Scott said:

"It is well established and perfectly clear that the plaintiff, by accepting this receipt as evidence of the defendant's obligation and liability, gave his assent to it and its terms and conditions, and it thereby became operative and effectual as the contract between the parties (Belger v. Dinsmore, 51 N. Y. 166 [10 Am. Rep. 575]), and the plaintiff, having introduced the contract as part of his case and relied upon it to sustain a recovery, is bound by its terms, and cannot claim the benefit of the contract and at the same time repudiate a part of its terms. * * * Parol evidence as to the value of the goods, or as to conversation between plaintiff's clerk and defendant's driver, was inadmissible to vary the written contract. By the terms of the contract the defendant's liability was limited unless a greater value than $50 was stated in the receipt, and, if not embodied in the receipt, it is wholly immaterial whether or not it was stated orally to the driver, especially as the plaintiff had himself filled out the receipt to suit himself and had omitted to mention any value. It was therefore error to so submit the case as to allow a greater recovery than that provided for in the contract."

In Greenwald v. Weir, 130 App. Div. 696, 115 N. Y. Supp. 311, affirmed 199 N. Y. 170, 92 N. E. 218, 35 L. R. A. (N. S.) 971, Mr. Justice Scott said:

"Furthermore, if the written receipt, which constitutes the contract of shipment, contains a clause by which the shipper expressly agrees that the value of the property is not more than a stated sum, unless a different value is stated in the receipt, and no greater value is so stated, the shipper is held to have stated and represented, as one of the terms of his contract with the carrier, that the goods are not of a greater value than the sum stated, and will be estopped from afterwards claiming, in case of loss, that the value was actually greater."

In the same case in the Court of Appeals (199 N. Y. 170, 92 N. E. 218, 35 L. R. A. [N. S.] 971), Bartlett, J., said:

"In order to regulate its charges to its customers with reference to the value of the property transported, a common carrier may demand of the shipper a declaration of such value, or may agree with him that in default of a statement the value shall be deemed a given amount. This agreement

136 N.Y.S.—32

may be direct and express, or it may arise indirectly out of the acceptance by the shipper of a receipt from the carrier in which it is stated that the value is to be considered a sum specified if no other has been given by the shipper. Such was the character of the receipt given by the representative of the express company to the plaintiffs in the present case. * * * The contract of agreed valuation being one which the parties could lawfully make, the proof here required a finding that it had been made, and this fixed the measure of the plaintiff's damages at $50 and no more."

[2] The transaction then being evidenced by the written contract, it was error to receive evidence of an alleged prior parol agreement, as all previous negotiations were merged therein. Every provision applicable to the circumstances was material and cannot be ignored. The requirement that the value should be stated therein was essentially material. It was designed to prevent subsequent claims of oral agreements, easy to fabricate and almost impossible to refute. As the receipt is a written contract impliedly consented to by the shipper by the act of receiving it, it is to be upheld and enforced as such.

[3] The respondent undertakes to avoid its effect by the claim that he did not offer it in evidence, but that it was put in by the defendant. There is no substance in this claim. The paper was offered by the defendant in the Long, Belger, Hoffman, Bates, and Greenwald Cases, supra.

The determination of the Appellate Term affirming the judgment and order of the City Court appealed from should be reversed, and a new trial ordered, with costs and disbursements in all courts to the appellant to abide the event.

INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, and SCOTT, JJ., concur.

SCOTT, J. I concur for the reasons stated by Mr. Justice CLARKE, and also upon the ground that the defendant is sued as common carrier, and there is no evidence that defendant ever received any of the furs alleged to have been lost.