JONES v. PERKINS.

(Circuit Court, E. D. Michigan, S. D.   March 12, 1896.)

No. 3,433.

1. LACHES—PROMISE TO MAKE WILL.
    A suit to enforce a promise by a decedent to make complainant one of
    his devisees, if not brought till seven years after decedent's death, is
    barred by laches, as against decedent's heir, who has been continuously in
    possession for six of these years; no concealment or fraud by him being
    alleged, and the only excuse given for the delay being that complainant
    "supposed until recently" that the promise could not be enforced after
    decedent's death.

2. SAME.
    To support the defense of laches, it need not be shown that defendant
    has been injured by the delay.

Bill by Minnie C. Jones against Frank G. Perkins.

The complainant sets forth in her bill: That she is now of the age of 38
years; and in the year 1866, while living with her mother in Branch county,
in this state, at the request of one Barber Perkins, the father of the defend-
ant, was taken into the family of said Perkins, who had recently lost a
daughter of about the same age as complainant, upon the agreement by
Perkins and his wife that complainant should take the place in the family
of the deceased daughter, and upon the assurance by said Barber Perkins
that, "if your oratrix should become a member of their family, he, the said
Barber Perkins, would make her the same as his own child, and give her the
same share of his estate at his decease as he would to his other child, Frank
G. Perkins, the defendant herein."   As elsewhere stated in her bill, the prom-
ise alleged to have been made by said Perkins was "to give to your oratrix
an undivided one-half of all the estate, real and personal, he should possess at
his decease, the same as to his son, Frank G. Perkins, the defendant herein."
That, in pursuance of such agreement, complainant went to the home of said
Barber Perkins and wife, and became a member of his family, and so con-
tinued until her marriage, which was contracted with the consent and ap-
proval of the said Barber Perkins.   That, after being thus adopted into his
family, her name was changed to Minnie C. Perkins, which name she con-
tinued to bear until her marriage, and she was ever afterwards recognized
as the daughter of said Barber Perkins, and by the defendant as his sister,
and always conducted herself as such daughter, yielding filial obedience to
her adopted father and mother, and discharging all her duties towards them
as though she was their daughter.   The bill sets forth in detail the recogni-
tion which was accorded to her by said Barber Perkins and wife, agreeably
to their promise of adoption, and other matters of fact relied upon in proof
of her relationship to Barber Perkins and wife, which she claims to have
acquired by becoming a member of their family under the agreement men-
tioned.   It further appears from the bill that Barber Perkins removed to
St. Joseph county, Ind., where he died December 13, 1887, leaving real and
personal property of large value, situated in the states of Indiana, Michigan,
Kentucky, and elsewhere, the value of which was upwards of $20,000; that
administration of his estate was granted to the defendant, Frank G. Perkins,
by the circuit court for St. Joseph county, Ind., December 27, 1887; that
on the 11th day of March, 1889, the final account of the defendant as admin-
istrator of his father's estate in Indiana was allowed, and he was discharged
as such administrator, and thereupon he appropriated to his own use and
benefit all of the estate, real and personal, of his deceased father in the state
of Indiana; that on May 12, 1888, the defendant obtained letters of adminis-
tration of the estate of said Barber Perkins in the state of Michigan, from
the probate court for the county of Branch, Mich., and, in the course of his
administration, filed an inventory in said probate court of the estate, which
showed that the intestate owned at his decease a house and lot in said

county of the value of $1,200, and his personal estate inventoried at $3,000. The bill further sets forth that on April 9, 1889, an order was made by the probate court for the county of Branch adjudging that said defendant was the only heir of said Barber Perkins, discharging him as administrator as aforesaid, and assigning to him the real and personal property of the estate of said Barber Perkins, deceased, in Michigan, and the same passed into the defendant's hands, and has been used and controlled by him as his own from that time until this date, some portions thereof having been sold by him. In excuse of the apparent delay of the complainant in prosecuting her suit, complainant alleges: "That your oratrix, notwithstanding the agreement aforesaid made by the said Barber Perkins, to give her one-half of all the estate possessed by him at the time of his decease, in consideration of your oratrix becoming a member of his family, and sustaining to him the relation of a daughter during the time aforesaid, supposed until recently that, because said Barber Perkins had failed during his lifetime to execute a will devising to your oratrix such share or interest in his estate, that your oratrix could not enforce the agreement aforesaid; but having been advised that she was mistaken in this regard, and believing the same to be true, she alleges that she is entitled to the performance of the agreement so made upon the part of the said Barber Perkins in his lifetime, to grant and convey to her at his decease an undivided one-half of the real and personal estate he died seised of. That the said Frank G. Perkins, who has received and has the entire estate of the said Barber Perkins, as sole heir at law of said Barber Perkins, is obligated to convey to your oratrix one-half of all the estate and property received by him from his father, Barber Perkins. And that he should come to a just and true accounting with your oratrix with reference to such estate, and convey to her one-half of the same that remains undisposed of, and account to her for one-half of the proceeds of the sale of any that has been disposed of." The prayer for relief consists with the averments of the bill, and asks for an accounting of the property which has come into defendant's possession as heir at law of his father, and the conveyance of one-half thereof, and for other relief. The bill was filed March 11, 1895. To this bill the defendant filed 10 grounds of demurrer. Only the sixth and ninth of these will be considered. These are as follows: "(6) That no satisfactory excuse or reason is shown for the laches of complainant in making and presenting her claim, if such she had, when the estate of the said Barber Perkins was probated and settled as set forth in the bill of complaint." "(9) That, if any rights ever existed in the complainant as alleged in the bill of complaint, they expired by statutes of limitation before the commencement of this suit."

Johnson & Dickinson and Thurber & Stevenson, for complainant.
Campbell & Johnson, for defendant.

SWAN, District Judge. The theory of this bill is that the complainant is entitled to a specific performance of the contract it sets forth, and that equitably the defendant, who has succeeded to and received all the property of his deceased father, should be held to be a trustee for the complainant of one-half of the real and personal estate which he has received by descent. He appears to have been in the possession of the property in Indiana since the 27th day of December, 1887, and that in Michigan since the grant to him of letters of administration by the probate court for the county of Branch, May 12, 1888. He was discharged from his trust in Indiana March 11, 1889, and in Michigan April 9, 1889. It thus appears that nearly six years had elapsed from the date of his discharge as administrator to the filing of the bill in this cause, March 11, 1895. Where specific performance of a contract is sought at the hands of a court of equity, that tribunal generally exacts from suitors for such relief promptness and diligence in the assertion of the rights

claimed, and grants or withholds its aid according to the equity of the cause presented. Where one has slept long upon his rights, the delay must be satisfactorily accounted for and excused; and, in order to set the court in motion, it should clearly appear that the relief prayed is such as the complainant is equitably entitled to call for, and that the delay which has supervened has not injuriously affected the party against whom relief is sought. The lapse of time, where the delay has been great, and there are no excusatory circumstances to palliate it, carries with it a reasonable inference, if not a presumption, that the parties and the court have not the light, and cannot obtain that knowledge of the circumstances surrounding the transaction sought to be investigated, that a prompt and reasonable assertion of the claim might have afforded. The courts therefore scrutinize with jealousy stale claims and demands, especially where death has removed those whose conduct is to be investigated, and who necessarily were best cognizant of the transactions involved. Accordingly the equitable rule is that a tardy suitor must "set forth in his bill, specifically, what were the impediments to an earlier prosecution of his claim; how he came to be so long ignorant of his rights, and the means used by the respondent to fraudulently keep him in ignorance; and how and when he first came to a knowledge of the matters alleged in his bill; otherwise the chancellor may justly refuse to consider his case, on his own showing, without inquiring whether there is a demurrer or formal plea of the statutes of limitation contained in the answer." Badger v. Badger, 2 Wall. 87, 94. The same requirements are made in Wood v. Carpenter, 101 U. S. 135; Bank v. Carpenter, 101 U. S. 567; Harwood v. Railroad Co., 17 Wall. 78; Marsh v. Whitmore, 21 Wall. 178; Godden v. Kimmell, 99 U. S. 201. While some of these cases deal especially with the question of fraud, the principle which they apply requires the same rule of judgment where the complainant makes no charge of fraud, but has been merely negligent in prosecuting a claim for relief. Brown v. County of Buena Vista, 95 U. S. 157; Twin Lick Oil Co. v. Marbury, 91 U. S. 587; Hayward v. Bank, 96 U. S. 611; Holgate v. Eaton, 116 U. S. 33, 6 Sup. Ct. 224; Davison v. Davis, 125 U. S. 90, 8 Sup. Ct. 825; Société Foncière et Agricole des Etats Unis v. Milliken, 135 U. S. 304, 10 Sup. Ct. 823; Galliher v. Cadwell, 145 U. S. 368, 12 Sup. Ct. 873. In the latter case, Mr. Justice Brown, who delivered the opinion of the court, says that the cases which deny relief where long delay has supervened in the assertion of rights "all proceed upon the theory that laches is not, like limitation, a mere matter of time, but principally a question of the inequity of permitting the claim to be enforced,—an inequity founded upon some change in the condition or relation of the property or the parties." In the cases which he cites as illustrative of the doctrine of the courts of equity upon the effect of delay, complainants who had postponed action for periods ranging from two to seven years were held chargeable with laches, and denied relief.

It is contended on behalf of complainant in the case at bar that it must appear to the court, where laches is urged as the ground of

defense, that detriment has come to the defendant from the delay; that his position has been changed, to his injury, or that he has been deprived of evidence which an earlier prosecution of the suit would have enabled him to obtain. This position is not tenable. There are cases where a longer delay than is here complained of has been excused by circumstances, where the court could clearly see that it has occasioned no prejudice to the defendants, but these are exceptional. The doctrine of laches as a defense presumes that the lapse of time is constantly destroying the evidence of rights, and that the death of witnesses and the loss of documentary evidence is its ordinary consequence. In this case the bill does not allege that the defendant knew of the arrangement under which it is claimed complainant was taken into the family of Barber Perkins, nor are any acts of concealment or fraud imputed to him whereby the complainant was induced to remain quiescent. The only apology tendered by the bill for her inaction is:

"She supposed until recently that, because the said Barber Perkins had failed during his lifetime to execute a will devising to your oratrix such share or interest in his estate, that your oratrix could not enforce the agreement aforesaid; but having been advised that she was mistaken in this regard, and believing the same to be true, she alleges that she is entitled to a performance of the agreement," etc.

She does not deny, but by implication admits, that she knew that the estate of Barber Perkins was in course of administration both in Indiana and Michigan, and that the defendant was asserting his right thereto as sole heir to his father, and that upon the close of his administration the property was awarded to him by the decrees of the probate courts in both states, and he was discharged from his trust. These facts were matters of record, of which she had constructive notice. She made no movement in her own interest for nearly five years after the defendant had been discharged as administrator, and the courts had assigned to him the real and personal property of his father's estate. The only extenuation of this inaction is, confessedly, her supposition "until recently" that the failure of Barber Perkins to execute a will devising to her the alleged promised interest in his property prevented her from enforcing his alleged agreement so to do. When she came to the knowledge that her legal opinion of the effect of Barber Perkin's intestacy was erroneous is not stated, otherwise than by the phrase "until recently,"—an allegation too vague to put a court of equity in motion after so long a lapse of time. But, passing the vagueness of this allegation, it is impossible to condone, consistently with rules of equity, the complainant's failure for nearly seven years to ascertain or take counsel upon the facts which she now prefers as a ground of relief. A suitor cannot evade the beneficent rule of equity which requires promptness and diligence in the assertion of rights by pleading and proving his erroneous conception of the law as an excuse for delay, especially in a case like this, where no fraud or concealment is charged upon the person against whom the relief is sought, where it is not claimed that the matters alleged as the basis of the suit were known to defendant, and where the principal act-

ors in the transactions sought to be investigated have passed away. If the promise which complainant asks to have enforced had been made to be performed upon the happening of any other event than the death of the promisor,—as, for example, if the alleged agreement under which complainant says that she assumed the relation of a daughter to Barber Perkins had provided that he should, upon her arriving at the age of 21 years, convey to her either the interest in his property, or a specified sum of money, or other consideration,—it is clear that it would have been necessary, in order to avoid the bar of the statute of limitations, to sue upon such a promise within the period fixed by that statute, which in actions on simple contracts, in Michigan, is six years. The fact that the contract was not to be performed until the death of Perkins did not change its character, or shorten the time for suing thereon. The cause of action upon the agreement set forth in the bill accrued at his death. Sword v. Keith, 31 Mich. 263. While a shorter period than that allowed by the statute of limitations is sometimes held to bar a suit in equity, here the legal remedy has become barred by the statute, and the equitable remedy does not survive it. Webster v. Gray, 37 Mich. 37. The complainant has suffered nearly seven years to elapse since the death of Barber Perkins before making her present claim, and she has been thus supine without other excuse than her own erroneous notion of the effect of his death intestate upon the alleged promise. During all this time the defendant has presumably paid the taxes upon the property, and met the expenses of its care, in the belief, encouraged by complainant's silence, that his title as heir was unquestionable, with no incentive to obtain and perpetuate evidence in its conformation, and, so far as the bill shows, without protest or complaint on the part of his foster sister. Such laches merit no indulgence. Fraker v. Houck, 36 Fed. 403. The case made by the bill is lacking in equity. The demurrer must be sustained, and the bill dismissed, with costs.