JOHN W. BAXTER, APPELLEE, V. NATIONAL MORTGAGE LOAN COMPANY, APPELLANT.

FILED MARCH 16, 1935. No. 29132.

538

*John C. Hartigan* and *Peterson & Devoe,* for appellant.

*Stewart, Stewart & Whitworth, contra.*

Heard before Goss, C. J., Rose, Good, Eberly and Day, JJ., and Eldred and Livingston, District Judges.

Eberly, J.

This is an appeal by the National Mortgage Loan Company, defendant in the district court for Lancaster county (and herein designated as "defendant" or "loan company"), from a judgment entered therein in favor of plaintiff, John W. Baxter, for the sum of $72,620.24. The procedure below was an action in equity, and the cause is here for trial *de novo.*

In summarizing the allegations of the pleadings, it may be said that plaintiff's petition sets forth that the defendant on or about June 1, 1924, by fraud, secured the execution and delivery of a note for $55,000, secured by a real estate mortgage covering 4,000 acres owned by plaintiff in Pawnee county, Nebraska; that at said time plaintiff was fraudulently induced to sign the note and mortgage in blank, with authority to defendant to fill out the same in an amount not in excess of $9,000; that, in violation of such instruction, the note and mortgage securing the same were filled out by defendant in the sum of $55,000, which money was not received by plaintiff, and which note and mortgage were void; that on or about April 1, 1925, by falsely and fraudulently representing to the Federal Trust Company that plaintiff was indebted to defendant in the sum of $55,000 on the note and mortgage aforesaid, defendant caused such Federal Trust Company to pay to it from the proceeds of a loan made by such trust company on plaintiff's land more than $55,000 "in purported payment of the aforesaid note and mortgage and defendant has refused to account to plaintiff therefor;" and, further, that "defendant in the aforesaid transaction was represented by its secretary, one R. F. Ireland, and plaintiff dealt with said Ireland as an officer and representative of defendant."

The present action was commenced on June 24, 1932, but in the fifth paragraph of plaintiff's petition the following is alleged: "During all of the aforesaid time and until 1931, plaintiff was a resident of Connecticut and New York and was not in Nebraska except on a few occasions for short times, and on such occasions he was not in Pawnee county, Nebraska. Plaintiff at all times herein mentioned has been inexperienced in business matters and has been in poor health. Plaintiff did not discover the facts alleged in paragraphs 3 and 4 hereof and the aforesaid fraud of defendant or any evidence thereof until a short time before the filing of this action."

Defendant's answer contained the following: "1st. Alleges that the present cause of action of the plaintiff is barred by the statute of limitations. 2d. That the plaintiff has been guilty of gross laches and negligence in the assertion of his pretended claim and by reason thereof has no cause of action. 3d. The defendant denies each and every allegation in said petition contained."

By the fourth, fifth and sixth paragraphs of such answer it was alleged that the plaintiff employed Rolland F. Ireland "as his attorney-in-fact and as an attorney-at-law to represent the plaintiff in" obtaining "money by mortgage on the lands described in plaintiff's petition and other lands;" that pursuant to such employment by plaintiff there was obtained from defendant $55,000 on the mortgage signed by him on the lands described in plaintiff's petition, which was delivered to plaintiff, and that plaintiff had full notice and knowledge of the said mortgage in the fall of 1924, and fully approved and acquiesced in the same by himself and his authorized agent, received the proceeds thereof, and is estopped to deny same.

To this answer plaintiff filed a reply in the nature of a general denial.

Though the transcript fails to disclose that the plaintiff in any manner challenged the sufficiency of the answer in the trial court, it is now contended that the defendant has failed to properly plead the facts claimed to show that the

cause of action was barred by the statute of limitations, and that mere conclusions are insufficient; that likewise the defendant failed to plead the facts claimed to show laches, and that mere conclusion is insufficient. In a proper case the rule contended for by plaintiff may be conceded. Thus, in *Pinkham v. Pinkham,* 61 Neb. 336, cited by plaintiff, this court announced the rule: "A reply alleging that the defendant's counterclaim did not accrue within the period provided by law for asserting such claim, and containing no facts from which the conclusion is deduced, tenders no issue and such allegation may be entirely disregarded."

However, it seems that in view of the doctrine announced in *Scott v. De Graw,* 90 Neb. 274, in the light of the facts presented by the present record, the principle announced in the *Pinkham* case is not controlling. In the instant case the first four paragraphs of plaintiff's petition set forth a cause of action which accrued, if at all, "on or about April 1, 1925." In this condition the petition obviously failed to state a cause of action at the time it was filed on June 24, 1932, and it was essential for this purpose that there be added thereto allegations of fact which would show affirmatively that the statute of limitations had not run. Evidently for this purpose the pleader added to his petition paragraph 5, already quoted. By the general denial defendant took issue with the facts alleged in this paragraph, and to this he added the allegation covering the defense of the statute of limitations. While the sufficiency of the latter standing alone might be subject to challenge in connection with the issue formed by the general denial, it seems invulnerable to the attack now made.

In *Scott v. De Graw, supra,* we find an action on a note due December 11, 1901. The controlling fact was an indorsement of a payment of $6 thereon alleged to have been made on February 7, 1905. The action was begun on December 31, 1909. The allegation of payment was denied in the answer with the allegation that the action was barred. This court, in an opinion by Sedgwick, J., an-

nounced the rule, viz.: "In this state the statute of limitations is a statute of repose; it prevents recovery on stale demands. If the petition in an action upon a promissory note sets out the note which shows upon its face that it is barred by the statute, and partial payments are also alleged in the petition which would remove the bar of the statute, and such payments are denied in the answer, with the allegation that the note is barred, the plaintiff cannot recover without evidence of such payments."

Unless the case last cited is now to be overruled, the fundamental reasoning approved therein is controlling on the question of the proper pleading of the statute of limitations in the instant case.

By parity of reasoning the question of the sufficiency of the pleading of the defense of laches must be resolved against the contention of the appellee. Paragraph 5 of his petition, in legal effect, performs a double function. So far as pleading is concerned, it tolls the statute of limitations, and, in addition, alleges facts which, if established by sufficient proof, excuse the pleader's laches. This pleading was thus necessary and proper. As already set forth, the transaction upon which plaintiff's demand was based occurred on or before May, 1924. This action was not commenced until June 24, 1932. Under these circumstances the applicable rule is: "If plaintiff's claim appears to be barred by laches, the circumstances which excuse the apparent delay must be set forth." 4 Standard Ency. of Procedure, 119. Also, "Where the bill of a suitor who has slumbered long upon his rights shows apparent laches, the suitor must generally account for and excuse his delay by proper allegations in his bill." 18 Standard Ency. of Procedure, 431. See, also, *Landsdale v. Smith,* 106 U. S. 391; *Godden v. Kimmell,* 99 U. S. 201, 212; *New Albany v. Burke,* 11 Wall. (U. S.) 96; *Badger v. Badger,* 2 Clif. 137, 154, affirmed 2 Wall. (U. S.) 87; *Alexander v. Fidelity Trust Co.,* 215 Fed. 791; *Jones v. Perkins,* 76 Fed. 82; *Kleinclaus v. Dutard,* 147 Cal. 245; *Bell v. Hudson,* 73 Cal. 285; *Wilcoxon v. Wilcoxon,* 199 Ill. 244; *Walker v.*

*Ray,* 111 Ill. 315; *Henry County v. Winnebago Swamp Drainage Co.,* 52 Ill. 299; *Hunt v. Forman,* 2 Dana (Ky.) 471; *Reynolds v. Green,* 10 Mich. 355; *Campau v. Chene,* 1 Mich. 400; *Lane v. Farmer,* 11 Lea (Tenn.) 568, 577; *Wichita Land and Cattle Co. v. Ward,* 1 Tex. Civ. App. 307; *Eubank v. Barnes,* 93 Va. 153; *Terry v. Fontaine's Adm'r,* 83 Va. 451; *Chezum v. McBride,* 21 Wash. 558; *Jarvis v. Martin's Adm'r,* 45 W. Va. 347; *Jackson's Adm'r v. Hull,* 21 W. Va. 601.

"But by analogy to the statute of limitations some courts hold the rule to be that the plaintiff need not allege facts avoiding the appearance of laches unless the delay is in excess of the period of limitation." 18 Standard Ency. of Procedure, 431. See, also, *Wyman v. Bowman,* 127 Fed. 257; *Boynton v. Haggart,* 120 Fed. 819; *Kelley v. Boettcher,* 85 Fed. 55; *Sabre v. United Traction & Electric Co.,* 156 Fed. 79; *Walshe v. Dwight Mfg. Co.,* 178 Ala. 310; *Fowler v. Alabama Iron & Steel Co.,* 164 Ala. 414.

In *Hays v. Port of Seattle,* 251 U. S. 233, 239, Pitney, J., in delivering the opinion of the court, says: "It is for the complainant in his bill to excuse the delay in seeking equitable relief, where there has been such; and if it be not excused his laches may be taken advantage of either by demurrer or upon final hearing. *Maxwell v. Kennedy,* 8 How. 210, 222; *Badger v. Badger,* 2 Wall. 87, 95; *Marsh v. Whitmore,* 21 Wall. 178, 185; *Sullivan v. Portland, etc., R. Co.,* 94 U. S. 806, 811; *National Bank v. Carpenter,* 101 U. S. 567; *Landsdale v. Smith,* 106 U. S. 391; *Hammond v. Hopkins,* 143 U. S. 224, 250; *Galliher v. Cadwell,* 145 U. S. 368, 371-373; *Hardt v. Heidweyer,* 152 U. S. 547, 559; *Abraham v. Ordway,* 158 U. S. 416, 420; *Willard v. Wood,* 164 U. S. 502, 524; *Penn Mutual Life Ins. Co. v. Austin,* 168 U. S. 685, 696-698."

Obviously the result of the pleading in this case is to create an issue on the subject of laches. It is the equivalent of defendant expressly negativing the existence of the facts affirmatively alleged by the plaintiff in the fifth paragraph of his petition, with the added allegation that there-

by "the plaintiff has been guilty of gross laches and negligence in the assertion of his pretended claim and by reason thereof has no cause of action." On principle the sufficiency of this issue to properly present the question of laches may not be gainsaid. It would seem that this conclusion finds ample support in the authorities, for the rule established by the weight of authority unquestionably is that, where the plaintiff attempts to excuse his laches, the reason of the rule (requiring the defendant to plead the same) ceases, and the defendant may avail himself of the defense even though not set up in his answer. *Hall v. Fullerton,* 69 Ill. 448; *DeWitt v. Miller,* 9 Tex. 239; *Williams v. Rhodes,* 81 Ill. 571.

But the general rule also obtains that, "Regardless of whether the defendant is or is not required to plead laches in order to avail himself of the defense as a matter of right, it seems to be a general rule that the court may of its own motion deny relief to a party because of his laches even though it be not pleaded or urged by the adverse party." 18 Standard Ency. of Procedure, 435. See, also, *Richards v. Mackall,* 124 U. S. 183; *Godden v. Kimmell,* 99 U. S. 201, 212; *Sullivan v. Portland, etc., R. Co.,* 94 U. S. 806, 811; *Marsh v. Whitmore,* 21 Wall. (U. S.) 178, affirming 1 Hask. 391; *Badger v. Badger,* 2 Clif. 137, affirmed 2 Wall. (U. S.) 87; *National Cash Register Co. v. Union Computing Machine Co.,* 143 Fed. 342; *Calivada Colonization Co. v. Hays,* 119 Fed. 202; *Lakin v. Sierra Buttes Gold Mining Co.,* 25 Fed. 337; *Leavenworth County v. Chicago, R. I. & P. R. Co.,* 18 Fed. 209; *Credit Co. v. Arkansas Central R. Co.,* 15 Fed. 46; *Gibson v. Herriott,* 55 Ark. 85; *Suhr v. Lauterbach,* 164 Cal. 591; *Stevinson. v. San Joaquin, etc., Co.,* 162 Cal. 141; *Chapman v. Bank of California,* 97 Cal. 155; *Lux v. Haggin,* 69 Cal. 255; *Harris v. Hillegass,* 66 Cal. 79; *French v. Woodruff,* 25 Colo. 339, 352; *Hagerman v. Bates,* 24 Colo. 71; *Crutchfield v. Hewett,* 2 App. D. C. 373; *Mayse v. Gaddis,* 2 App. D. C. 20; *Geter v. Simmons,* 57 Fla. 423; *Predestinarian Baptist Church v. United Baptist Church,* 139 Ky. 110; *Potter v.*

*Potter's Receiver,* 31 Ky. Law Rep. 137; *Warburton v. Davis,* 123 Md. 225; *Syester v. Brewer,* 27 Md. 288; *Stewart v. Joyce,* 201 Mass. 301; *Snow v. Boston Blank-Book Mfg. Co.,* 153 Mass. 456; *Zebley v. Farmers Loan & Trust Co.,* 139 N. Y. 461; *Taylor v. Slater,* 21 R. I. 104; *Madison v. Ducktown Sulphur, Copper & Iron Co.,* 113 Tenn. 331, 355; *Rogers v. Van Nortwick,* 87 Wis. 414; *McCann v. Welch,* 106 Wis. 142; *Melms v. Pabst Brewing Co.,* 93 Wis. 153; *Coon v. Seymour,* 71 Wis. 340; *Smith v. Clay,* 2 Amb. (Eng.) 645. In line with these cases last cited appears the case of *Hawley v. Von Lanken,* 75 Neb. 597. See, also, *Severson v. McKenzie,* 122 Neb. 827.

We are also committed to the doctrine that, "Where the laches of the plaintiff and the staleness of his claim are apparent from the petition, objection may be taken by demurrer." *Hawley v. Von Lanken,* 75 Neb. 597.

Then, again, we are committed to a rule of pleading entirely at variance with the contention of plaintiff as applied to the admitted facts of the present case. Thus, in *Harrison v. Rice,* 78 Neb. 659, the doctrine was announced by this court in the following language: "When the suit is brought within the time fixed by the analogous statute of limitations, the burden is on defendant to show the existence of circumstances amounting to laches. When the suit is brought after the statutory time, plaintiff must plead and prove that laches does not exist."

In this connection it will be remembered that the transactions in suit occurred more than seven years prior to the commencement of the action. This fact invokes the application of the rule just quoted, and necessarily imposes on the plaintiff the burden of pleading and proving the absence of laches.

It follows that the issues of the statute of limitations and laches of plaintiff are properly presented by the record, and are to be determined by the facts established by the evidence.

Prior to January, 1925, and during the transactions involved in this litigation, Rolland F. Ireland was the secre-

tary and treasurer and practically the sole manager of the loan company. During that period it appears to have been a "one-man company" and Ireland was that man. John W. Baxter, plaintiff, was a resident of Greenwich, Connecticut, and the owner of a large tract of land comprising several thousand acres, situated in the states of Nebraska and Kansas. Mr. E. T. Weekes of Beatrice,. Nebraska, was in charge of his business affairs in the two states mentioned. Baxter came to Nebraska in the spring of 1924 seeking to raise $32,000. He called on Weekes at Beatrice, but the latter could supply but $15,000. Accordingly Weekes and Baxter came to Lincoln, Nebraska, and entered into negotiations with defendant through Ireland, its executive officer. Baxter then knew of Ireland's relations with the loan company, that he made its loans, and evidently wanted to enlist Ireland's services in his own behalf. Accordingly, pursuant to an arrangement with Baxter, the details of which are not disclosed by the evidence, by two instruments in writing, each dated May 3, 1924, and executed and acknowledged by Baxter on the same day, Rolland F. Ireland was constituted Baxter's attorney-in-fact and given charge over all property and business of Baxter in the state of Nebraska, conferring general powers of agency in the broadest terms, including "full right, power and authority to bind my credit and my estate, both real and personal, by the execution and delivery of promissory notes and such other papers as may be requisite and necessary, evidencing indebtedness and receive and receipt for proceeds arising therefrom." These powers of attorney each close with the words, "the intent being that all acts and things done by the said Rolland F. Ireland in my name and as my said attorney shall be as binding as if done by myself when personally present."

The third instrument, which Baxter appears to have signed in the transactions that followed, was a promissory note for $9,000, payable on demand to the order of Rolland F. Ireland. It is identified in the record as exhibit 16. The receipt of the $9,000 loan is admitted by Baxter.

It also appears undisputed in the record that this $9,000 was paid out of the proceeds of the $55,000 note and mortgage; further, that defendant is entitled to credit for that amount. Immediately after signing the $9,000 obligation Baxter and his friend, Du Moulin, went to South Dakota to investigate certain proposed oil developments. On their return to Lincoln from South Dakota, Baxter then signed a blank promissory note and a blank real estate mortgage, and the blanks thus signed were delivered to Ireland. After some intervening time this blank note and mortgage were completed, pursuant to Ireland's direction and authority, by filling in the amounts as $55,000, a list of lands was attached to the mortgage, and these instruments thus completed appear now as exhibits 6 and 7 of the present record.

Baxter now testifies that he authorized Ireland to fill out these blank instruments, so signed by him, in the sum of $9,000 only, and his claim for recovery in this action is, in part, based on the absence of authority in Ireland to complete the same in the sum of $55,000, as well as Ireland's violation of his instructions in reference to the disposition of that sum.

However, for reasons known to themselves, Baxter and Ireland endeavored to conceal the transactions evidenced by exhibits 6 and 7. Baxter said nothing concerning this matter to Weekes, his agent in full charge of his business affairs in Nebraska, and, as we will see, failed to enlighten him as to the true situation even when expressly inquired of concerning the same.

The blank note and mortgage with the Baxter signatures affixed were placed in the John W. Baxter file, kept for a time in Ireland's office.

Though withdrawals from the loan company on the faith of the Baxter loans were commenced by Ireland, as Baxter's agent, in May, 1924, and continued so that on August 22, 1924, they aggregated $39,646.73, exhibits 6 and 7 had not then been completed and the $55,000 loan at that time had not been formally set up as an account on

the books of the loan company; neither had the transaction itself nor the payment of any of the funds thus made been reported by Ireland or the loan company's employees to its officers. The two powers of attorney likewise were withheld from the records, and only Baxter and Ireland knew of them. However, the company officers, in the late fall or early winter of 1924, employed a firm of licensed accountants to audit the books of the loan company. This auditor, in the course of his examination, discovered irregularities, including the withdrawal from the loan company for Baxter in the transaction now under consideration, which then exceeded $50,000. Thereupon exhibits 6 and 7, fully completed, then evidencing an indebtedness of $55,000, were produced and, for the first time, submitted to the officers of the loan company. Evidence contained within the record supports the conclusion that the completion of exhibits 6 and 7 was under the direction of Ireland.

The record also discloses that, when this discovery of the $55,000 transaction was made, Rolland F. Ireland was temporarily absent, in Colorado. He was informed of the situation by his brother, who was then employed by the loan company in the capacity of a bookkeeper. On November 9, 1924, Rolland F. Ireland telegraphed to the president of the loan company, as follows:

"I have on file Baxter's written authority for disbursement of all money and that is reason for indorsements. Might also say arrangements are made so that loan will be paid in full on or before due. Will show written authorization when see you."

In due time Baxter's two powers of attorney, executed May 3, 1924, were produced and submitted to the president of the loan company. In the meanwhile the president of the loan company had sought out Weekes, who he was informed represented Baxter and had charge of his business affairs in Nebraska. Weekes had no information whatever on the $55,000 loan. However, at the insistence of the president of the loan company, Weekes prepared a letter which, on November 11, 1924, by registered mail,

was forwarded to John W. Baxter at Greenwich, Connecticut. That this letter was actually received by Baxter in due course of mail is established beyond a doubt. This letter read, in part, as follows:

"I received notice yesterday from some of the loan companies that there had been a second mortgage placed on the Pawnee county lands of $55,000 by the National Mortgage Loan Company of Lincoln, Nebraska, or Mr. Ireland and associates.

"This mortgage was dated May 7, 1924, and signed by you at Lincoln, Nebraska, the amount being $55,000 and a mortgage on the twenty-five quarters, or all the land you have in Pawnee county. Of course, this is a second mortgage, and is due April 1st, 1925. That makes the land in Pawnee county, with the first and second mortgages, mortgaged for $196,000, or your land in Pawnee county is mortgaged for approximately $50 an acre. This new second mortgage of Ireland and associates of Lincoln draws eight per cent. interest from May 7, 1924, until April 1st, 1925, or $4,400 a year, then ten per cent. after maturity.

"I did not know just how much money you had received in Lincoln when you were there this last May, but was surprised at the $55,000 mortgage. The mortgage is made and then the numbers of the twenty-five quarters are pasted on it, which ties up your entire Pawnee county land. I do not know whether you received this amount of $55,000 or whether you left the amount to be filled in later and signed the mortgage, is the reason I am writing you. * * *

"This second mortgage of $55,000 to Ireland and his associates, or the National Mortgage Loan Company, * * * is to mature April 1st, 1925."

A letter written by Baxter to Rolland F. Ireland at Lincoln, Nebraska, under date of November 11, 1924, concerning the above letter thus sent from Weekes to Baxter, and established by undenied evidence, is, in part, as follows: "I enclose copy of a letter which I received through

registered mail from Weekes. He wants an answer. What am I to say?"

As to what Ireland's instructions to Baxter on this subject were may be inferred from the fact that Baxter never answered this letter of November 11, 1924, from Weekes, and wholly failed to communicate the facts relating to the transaction to the loan company.

On November 15, 1924, a second letter from Weekes is mailed to John W. Baxter at his address in Greenwich, Connecticut, in which the $55,000 mortgage to the loan company is discussed. This letter was also received by Baxter, but he never answered it.

On November 22, 1924, after certain conveyances of lands owned by Baxter to Rolland F. Ireland had been recorded, Weekes telegraphed to Baxter requesting an immediate answer, and on the same day he mailed a letter to Baxter at Greenwich, Connecticut, confirming the telegram, and amplifying the statements contained therein. To these communications Weekes received no reply. Accordingly, at the solicitation of the president of the loan company, Weekes proceeded to Greenwich, Connecticut, to obtain a personal interview with Baxter. On his arrival he ascertained that Baxter had, after the receipt of Weekes' first letter, departed for Chicago, Illinois. Weekes followed. In the annex of the Congress Hotel in Chicago Weekes met John W. Baxter in December, 1924, and his positive testimony as to the conversation then had between them is, in part, as follows:

(Answer to question 833) "I told Mr. Baxter that you (president of the loan company) told me to find him and find out about this $55,000 mortgage. * * * 834. Q. Did you tell him what this $55,000 mortgage covered? A. It covered—(interrupted) 835. Q. I mean did you tell him that? A. Yes, sir. 836. Q. Explain what you told him in regard to what the mortgage covered? A. I told him it was a $55,000 mortgage on Pawnee county, that you had come to see me in regard to it, that it would be due in six months, that the mortgage was made in May; it wasn't

filed until in November; as soon as you found it out you discharged Mr. Ireland, and that you wanted to know how much money of this he got and all about it, and, as I had written Mr. Baxter letters and couldn't hear from him, I told him about the mortgage."

The record also contains proof of the contents of a letter written by John W. Baxter from Chicago to Rolland F. Ireland, under date of December 10, 1924. In this letter Baxter said, in part:

"Weekes arrived in Chicago this morning and I have just finished a ten minutes talk with him, as he said he had a matter of great importance which he had heard of. * * * Mr. Hartigan had come to him to tell him that Mr. Ireland had placed mortgages on Mr. Baxter's lands amounting to seventy thousand five hundred dollars ($70,500) and that Mr. Ireland had done this without the authority of the company and that they had fired him for it and that they would like to know if I had received the money as they had no receipt signed by me for it. * * * I merely gave him to understand he was telling me nothing."

The record also contains an original letter, dated December 11, 1924, written by Rolland F. Ireland from Lincoln, Nebraska, to John C. Hartigan, president of the loan company, of Fairbury, Nebraska. This letter reads, in part:

"Mr. John W. Baxter has just written me saying that Mr. E. T. Weekes of Beatrice had been to Greenwich, Connecticut, to see him and he not being there Mr. Weekes had located him in Chicago. Mr. Weekes went to him and said that you had called on Mr. Weekes with reference to the company loan to Baxter and Weekes quoted you to Baxter as having said to him many disagreeable and unpleasant things concerning me. Knowing Weekes I cannot bring myself to believe that you made any such remarks, however, will be glad to talk with you concerning the same when I see you. * * * Mr. Weekes' report made no impression on Mr. Baxter he simply wrote me about it thinking I should be advised."

There appears in the record ten or more letters and telegrams written by John W. Baxter and transmitted to Rolland F. Ireland after Baxter had received the detailed and explicit information that exhibits 6 and 7, originally signed by him in blank and left with Ireland, had been completed and negotiated to the loan company as a note secured by a real estate mortgage on his lands for the sum of $55,000, due April, 1925; that proceeds thereof had been withdrawn without the filing of his personal receipts covering the same; that Ireland had been discharged by the loan company; and the further information that the company's officers who had succeeded Ireland in the management were anxiously desiring to ascertain the facts of this transaction and particularly if Baxter had actually received the amounts of money withdrawn while Ireland had charge of the loan company's affairs. These communications contain not a single expression from which it might be inferred that Baxter was surprised at the situation, so far as he was affected by it. He in no manner questions the authority for what was done. He does not even ask when, how, to whom, and in what amounts the withdrawals were paid out. He does not challenge the validity of the transaction as revealed to him, either in whole or in part. He continued his cooperation with Ireland by affirmative concealment in Ireland's behalf. When directly interrogated, he avoids making any disclosures, and consistently omits to furnish the loan company with the information which he knows its managing officers desire. This course of studied concealment was, so far as disclosed by the present record, continued by plaintiff until the commencement of the present action on June 24, 1932.

The facts just recited certainly brought Baxter within the rule so aptly stated by Chancellor Kent, viz.: "When the principal is informed of what has been done, he must dissent, and give notice of it in a reasonable time; and if he does not, his assent and ratification will be presumed." 2 Kent's Commentaries, 616.

The $55,000 note and mortgage must now be considered

as at all times the valid obligations of plaintiff, and that the subsequent payment thereof on April 7, 1925, created no new cause of action. The only questions remaining to be determined arise out of the disposition of the proceeds of this loan. It stands admitted that plaintiff has received the benefit of $9,000 of this amount. The power of disposition over the proceeds of this loan conferred upon Rolland F. Ireland by the terms of the power of attorney is not a matter of dispute and is determinable by a reasonable construction of such written instrument.

Preliminary to a consideration of the disposition of the $46,000 of the proceeds of the $55,000 loan, we are met with a challenge by plaintiff to the admissibility in evidence of defendant's exhibit 2. This is a report of an audit of the loan company for the period from January 1, 1924, to December 31, 1924, made by Campbell, Myers and Marsh. It comprises 78 typewritten pages. A number of entries contained in this exhibit were first offered and received in evidence by plaintiff, including "exhibit 2 at page 72." Thereafter, upon proper foundation laid the following offer of proof was made by the defendant: "The defendant offers in evidence the book as a whole not because,—only for the purpose of indicating the page and especially page 72, being exhibit 107." To this offer a general objection was made which the court overruled. The bill of exceptions recites that exhibit 2, containing exhibit 107, was received in evidence. The order of the court itself expresses no limitations imposed on its admission. The use by the defendant of exhibit 2 as evidence generally is now challenged by plaintiff. Section 20-1215, Comp. St. 1929, would seem conclusive against plaintiff's contention.

Apart from statute, the approved practice is: "Evidence which is admitted generally is in the case for any legal purpose for which it is admissible, although the evidence, when introduced, was intended for a particular purpose." 64 C. J. 137.

In *Sill v. Reese*, 47 Cal. 294, it was held that counsel is

not bound by the declaration of a limited purpose, so as to preclude him from drawing other deductions than those suggested by the terms of the offer, from the evidence offered, unless injustice would follow to the opposite party by permitting such new inferences. In the absence of an express understanding between counsel and the court that the evidence is to be limited to a particular matter, the court will be authorized to consider it for any purpose for which it is competent and relevant to the issues. See *Sears v. Starbird*, 78 Cal. 225; *Fox v. Stockton Combined Harvester and Agricultural Works*, 83 Cal. 333; *Devine v. Chicago City R. Co.*, 166 Ill. App. 177; *Grant v. Mutual Protective League*, 192 Ill. App. 4; *Read v. Reppert*, 194 Ia. 620; *Springer v. Westcott*, 29 N. Y. Supp. 149; *Cohen v. Morris European & American Express Co.*, 136 N. Y. Supp. 489; *Louisville & N. R. Co. v. O'Neil*, 119 Va. 611.

When evidence is admitted without qualification, it is in the case for all legitimate probative purposes. Its effect is not to be limited to the precise purpose for which it was stated to be offered. *Booth Bros. & Hurricane Island Granite Co. v. Smith*, 115 Me. 89. See, also, *First Nat. Bank v. Union Hospital*, 281 Mass. 64; *Malkowski v. Olfs*, 161 Mich. 303.

Exhibit 2, having been admitted by the trial court without qualification, must be deemed to be in the case for all legitimate probative purposes. So treated, exhibit 2 commences with a "trial balance" of all the property and obligations of the loan company at the commencement of 1924 and closes with a trial balance reflecting its condition at the termination of that year. The correctness of these trial balances is unquestioned. Exhibit 2 sets forth an itemized statement of all items of business transacted by the loan company during the year, and among other items sets out the cash receipts and cash disbursements during the year. Among the cash disbursements thus set forth are more than $50,000 of the proceeds of the $55,000 Baxter mortgage. On this basis the trial balance at the end of the year checked against physical assets in posses-

sion of the loan company was found to be correct. In view of this fact the contention that, because certain checks employed by the loan company for the purpose of disbursing the Baxter funds were drawn payable to its own order, they evidence as a fact the payments by itself to itself cannot be accepted. Indeed, plaintiff's theory on this point is wholly inconsistent with the actual facts disclosed by the audit, which fairly reflects that on December 31, 1924, less than $2,500 remained in possession of the loan company of the proceeds of the Baxter loan, which again is fully established and verified by the actual properties possessed by the loan company at that time. The evidence thus negatives the plaintiff's claim that the defendant actually received and directly appropriated the proceeds of the checks drawn payable to its own order. Thus, it clearly appears that, instead of the defendant having received the proceeds of the checks in controversy, these proceeds were actually paid out by it as directed by Ireland in the course of Ireland's agency, and when this authority was subsequently challenged the powers of attorney referred to were produced in justification of the business done.

It would appear that the situation of the loan company in the instant case is quite analogous to the not unusual situation which arises in the business world when the cashier or other executive officer of a commercial bank occupying an outside position of trust keeps these trust funds so received, properly designated as such, on general deposit in his own bank. "Banks should not be required to supervise and scrutinize withdrawals by depositor having account in trust capacity." *Martin v. First Nat. Bank,* 51 Fed. (2d) 840.

In 5 Michie, Banks and Banking, 131, sec. 57c, the following appears: "In the absence of notice or knowledge that a breach of trust is being committed by an improper withdrawal, a bank cannot question the right of its customer to withdraw funds, nor refuse to honor his demands by check; and, therefore, even though the deposit is to customer's credit in trust, the bank has no obligation to

look after the appropriation of the trust funds when withdrawn or to protect the trust by setting up a *'jus tertii'* against a demand."

These principles were approved by this court in *State v. Farmers & Merchants Bank,* 112 Neb. 840. In that case the cashier of the bank was also administrator of an estate, and had deposited the estate funds in his bank. With these facts before us we announced the doctrine: "Where money is deposited in a bank to the credit of an administrator of an estate, the bank is charged with notice of the trust character of the fund, but is not required to see that the same is properly applied or accounted for, in the absence of notice, or knowledge of facts putting it upon inquiry, that the money is being misapplied. In such case, where the fund is withdrawn upon checks of the trustee, signed in his official character, the responsibility of the bank with regard thereto is ended."

In the case just quoted from we also held that the cashier, Berge, "was the agent of the bank; he was also agent of the estate. While acting for either principal his knowledge would be imputed to that principal; but, when he acted as administrator, his knowledge gained in that capacity could not be imputed to the bank."

By parity of reasoning, what Ireland did as agent for Baxter under the facts in the instant case was not imputable to the loan company. It therefore follows that the proceeds of the $55,000 loan having been wholly withdrawn by Ireland, under powers conferred on him by the written power of attorney, plaintiff's action must fail.

However, it is plaintiff's theory that one check in the sum of $17,000, which is shown as drawn to Baxter's order, was indirectly appropriated by the loan company. It is established that in 1924 the loan company owned a $13,000 real estate mortgage given by Thomas Shanley; that the Federal Trust Company paid the Shanley mortgage to defendant (then controlled by Ireland) on February 26, 1924. This total amount was $14,137.50. It was not credited on the books of the loan company until

August 13, 1924. By the books of the First National Bank of Lincoln, plaintiff establishes the fact that the $17,000 check issued on August 13, 1924, was deposited to Ireland's checking account on that day, and on the same day a check of $16,904.41 on this account was checked out. The books of the loan company disclose that on August 13, 1924, an entry was made therein showing the payment of $14,137.50 on the Shanley loan and $2,546.91 on liberty bond interest. On that date also Ireland issued checks on his personal account in the First National Bank of Lincoln for $14,137.50, $2,546.91, and $210, which were received and cashed by the loan company. But it cannot be gainsaid that the loan company was then entitled to receive an amount equal to the amounts evidenced by the three checks. The transaction was carried on through the First National Bank of Lincoln. The loan company had no actual knowledge as to the source of the funds from which the three checks were actually paid, save as may be imputed to it, due to the fact that Rolland F. Ireland, then attorney-in-fact for Baxter, was at the same time the secretary-treasurer and managing officer of the loan company.

It would seem that the case of *State v. Farmers & Merchants Bank*, 112 Neb. 840, would negative imputed notice under the facts in this instant case. But, passing this point, it must be conceded that at the conclusion of the transaction the loan company had no property in its possession in excess of the just amount it would have been entitled to, had Ireland honestly transacted the business placed in his care. It is equally obvious that the concealment was such that without the aid of Baxter the discovery of the fraud practiced by Ireland, if such there was, was impossible. Baxter was frequently importuned for information but wholly failed to impart the necessary facts which would have resulted in discovery. Yet, if plaintiff's theory is correct, Ireland's dishonesty and treachery, aided by the wilful concealment on the part of Baxter, will unjustly operate to deprive the stockholders of

the loan company of their property to the extent of the recovery permitted in this case.

Aside and apart from the reasons already suggested, which necessitate a denial of recovery by plaintiff, it would seem that he is barred by the statute of limitations as well as by the doctrine of laches. As heretofore shown, the information actually communicated to Baxter, as early as December 10, 1924, was ample to put him on inquiry, and there can be no question that to Baxter the means of knowledge were at hand. The rule is: "Whatever fairly puts a person on inquiry is sufficient notice, where the means of knowledge are at hand; and if he omits to inquire, he is then chargeable with all the facts which, by a proper inquiry, he might have ascertained. This, in effect, means that notice of facts which would lead an ordinarily prudent man to make an examination which, if made, would disclose the existence of other facts is sufficient notice of such other facts." 20 R. C. L. 346, sec. 7.

It is beyond question that a mere statement to the officers of the loan company, after November 15, 1924, to the effect that the $55,000 note and mortgage had been completed in violation of the instructions, and that excepting as to the $9,000 note Baxter had not authorized the disbursement of the proceeds of the loan and had actually received no part thereof, would have enabled all parties to secure proper protection. Baxter was informed that proceeds of this loan had been disbursed by Ireland's direction, whom he had constituted his attorney-in-fact, and a mere inquiry to the president of the loan company would have brought complete information and full particulars as to date, amount, and by whom such disbursements had been made. This silence Baxter maintained for more than seven years after he became chargeable with actual knowledge.

It is submitted that "The principal cannot be justified in wilfully closing his eyes to knowledge. He cannot remain ignorant where he can do so only through intentional obtuseness. He cannot refuse to follow leads, where his

failure to do so can only be explained upon the theory that he preferred not to know what an investigation would have disclosed. He cannot shut his eyes where he knows that irregularities have occurred. In such a case, he will either be charged with knowledge, or with a voluntary ratification with all the knowledge which he cared to have." 1 Meecham, Agency (2d ed.) 296.

In 1924 the loan company had a bond in the sum of $50,000 covering the acts of Rolland F. Ireland, its secretary-treasurer. If the theory of the transaction here in suit, now advanced by the plaintiff, is true, this bond in 1924 afforded ample indemnity for all possible losses. The seven years of silence of plaintiff has operated to bar all possible recovery on this obligation. Fraud forms an essential element in plaintiff's case. On this point the controlling principle is: An action for relief on the ground of fraud may be commenced only within four years after a discovery of the facts constituting the fraud or of facts sufficient to put a person of ordinary intelligence and prudence on an inquiry, which, if pursued, would lead to such discovery. *Parker v. Kuhn,* 21 Neb. 413; *Wright v. Davis,* 28 Neb. 479; *Cole v. Boyd,* 68 Neb. 146; *Davis v. Willey,* 273 Fed. 397; 37 C. J. 838.

The proceeding instituted by plaintiff is one in equity. The facts in the instant case invoke the application of the following doctrine: Courts of equity have inherent power to refuse relief after undue and inexcusable delay, independent of the statute of limitations, and in applying the doctrine of laches the true inquiry should be whether the adverse party has been prejudiced by the delay in bringing the action and whether an unreasonable excuse is offered for the delay. *Hawley v. Von Lanken,* 75 Neb. 597; *Eastern Banking Co. v. Robbins,* 97 Neb. 318; *Criswell v. Criswell,* 101 Neb. 349; 10 R. C. L. 395, sec. 142, and p. 406, note 21.

That the defendant has been prejudiced by plaintiff's delay cannot be denied, and the only real excuse offered— lack of knowledge—has been wholly disproved. It follows

that the laches of the plaintiff is established to such a degree as precludes any recovery by him upon the allegations of his petition, and that the district court erred in awarding judgment in his favor.

The judgment of the district court is, therefore, reversed and the cause dismissed at the costs of the plaintiff.

REVERSED AND DISMISSED.

ROSE, J., and LIVINGSTON, District Judge, dissent.